JNO. McCALL COAL COMPANY, Inc.,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 10484.

United States Court of Appeals
Fourth Circuit.

Argued June 22, 1966.

Decided March 3, 1967.

John S. McDaniel, Jr., Baltimore, Md. (Cable & McDaniel, Baltimore, Md., on brief), for appellant.

Frederick B. Abramson, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., David L. Rose, Atty., Dept. of Justice, and Thomas J. Kenney, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BELL, Circuit Judge, and LEWIS, District Judge.

OREN R. LEWIS, District Judge:

This case involves the construction of Section 2 of the Walsh-Healey Act, 41 U.S.C.A. §§ 35–45.

The facts set forth in the pleadings and the findings made by the Hearing Examiner, and confirmed by the Administrator, Division of Public Contracts, Department of Labor, are not here questioned.

The appellant, Jno. McCall Coal Company, Inc., sued the United States to recover $8,496.05 for coal sold and delivered pursuant to a contract embodying the provisions of the Walsh-Healy Act. The United States did not dispute the debt but claimed a setoff of $8,369.33 under four previous coal contracts.

The United States District Court for the District of Maryland heard the matter upon cross motions for summary judgment and concluded that appellant had not been paid the $8,496.05 prayed for in the complaint but that the United States had a valid and lawful setoff against this amount in the sum of $8,369.33.

Judgment was awarded the appellant for the difference—$126.72—with costs.

Appellant appeals the allowance of the setoff upon the grounds that the failure of Young-Weeks to pay any wages for the period in question did not constitute a breach of the requirement of Section 1(b) of the Walsh-Healy Act, 41 U.S.C.A. § 35,[1] and if so, it was not "the party responsible therefor" within the meaning of Section 2 of the Act (41 U.S.C.A. § 36).

We disagree with the appellant on both grounds and affirm the judgment of the District Court.

The setoff arose under the Walsh-Healey Public Contracts Act, 41 U.S.C.A. §§ 35–45, and regulations adopted thereunder as applied to four previous contracts between appellant and the United States. Each of the contracts was for an amount in excess of $10,000.00 and, therefore, subject to the provisions of the Act which require, inter alia, that parties contracting with the United States pay established minimum wages and overtime compensation and provide

1. 41 U.S.C.A. § 35(b):
(b) That all persons employed by the contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under said contract; * * *

safe and sanitary working conditions, 41 U.S.C.A. § 35(b) and (e). McCall did not qualify as a "regular dealer" within the meaning of Section 1(a) of the Act, 41 U.S.C.A. § 35(a), because it did not have any storage yards or other facilities in which it stocked and from which it sold coal to the public.[2]

McCall's eligibilty to contract with the United States rested upon its compliance with regulations issued under the Act, 41 C.F.R. 50-201.604(a).[3]

Pursuant to this regulation McCall submitted bids which named Young-Weeks Coal Company, Inc. as its supplier. Young-Weeks complied with the wage standards (but not the safety standards[4]) to May 14, 1957. From that date to June 14, 1957 Young-Weeks mined coal which was used to fulfill McCall's contracts with the United States. The employees were totally unpaid for this work. The mine closed on June 14, 1957. Young-Weeks was adjudicated an involuntary bankrupt on June 6, 1958. No assets were available for payment of these unpaid wages.

Upon review of the hearing before the Examiner, the Administrator, Division of Public Contracts, United States Department of Labor, determined that appellant and Young-Weeks failed to pay minimum wages and overtime compensation and to provide safe working conditions in regard to employees of Young-Weeks and ordered Jno. McCall Coal Company, Inc. to pay $8,369.33 to the Treasurer of the United States as liquidated damages for the breaches of contract and violations of the Act and regulations as set forth in the Hearing Examiner's decision.

We are without authority to overturn an administrative interpretation of an act or regulations adopted thereunder unless it can be said that the construction of the act is "plainly erroneous or inconsistent with the regulation."

2. § 35. Contractors for materials, etc., exceeding $10,000; representations and stipulations.

In any contract made and entered into by any executive department, independent establishment, or other agency or instrumentality of the United States, or by the District of Columbia, or by any corporation all the stock of which is beneficially owned by the United States (all the foregoing being hereinafter designated as agencies of the United States), for the manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,000, there shall be included the following representations and stipulations: (a) That the contractor is the manufacturer of or a regular dealer in the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract; * * *

The Act does not define "regular dealer," but the Secretary of Labor, in exercise of the rule-making authority vested in him by § 4 of the Act, 41 U.S.C.A. § 38, has by regulation, 41 C.F.R. § 50-201.101(b), defined the term as:

"(b) A regular dealer is a person who owns, operates, or maintains a store, warehouse or other establishment in which the materials, supplies, articles, or equipment of the general character described by the specifications and required under the contract are bought, kept in stock, and sold to the public in the usual course of business."

3. "§ 50-201.604. Partial administrative exemptions.

(a) Contracts with a person who regularly buys and sells coal on his own account in lots of not less than a cargo or railroad carload, or with a person who is authorized by one or more persons engaged in mining coal to negotiate and conclude contracts for the furnishing thereof in such lots, are exempt from the requirement of section 1(a) of the Act and § 50-201.1 of this part that such person represent that he is a manufacturer or a regular dealer in coal: *Provided, however*, That all of the following terms and conditions are met:

(1) That such person will notify the persons engaged in mining the coal that the purchaser thereof is the United States and that provisions of the Public Contracts Act are applicable; and

(2) That such person, apart from the liability of the mines, shall be liable for the observance in the mines of all the labor standards provided in section 1 of the act; and

(3) That such person notify the contracting agency that he will accept the contract upon the terms and conditions set forth above."

4. They are not here involved.

Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Even though our views with regard to interpretation differ from those of the administrative agency we would not be authorized to substitute our views if it could be said that the administrative interpretation was a reasonable one. Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

■ Such is the case here. The interpretations of the Walsh-Healy Act and the regulations adopted thereunder, as made by the Secretary of Labor acting through his Administrator, are both correct and reasonable.

Nevertheless, McCall insists that Congress never intended to require the payment of wages under any and all conditions. They urge that we construe Section 1(b) of the Act to encompass only those cases where some but less than minimum wages were paid. This contention is totally lacking in merit.

■ The language used by Congress is plain and clear. Section 1(b) commands that employees of government suppliers (in contracts exceeding $10,-000) be paid not less than the minimum wages as determined by the Secretary of Labor. Nothing therein permits the Secretary or the Courts to weigh equities in determining when to enforce this mandate.

■ It makes no difference whether employees go unpaid because of bankruptcy or from any other cause beyond the direct control of the contractor, or whether they go unpaid because of inadvertence or because of a willful act.

■ The question to be determined is whether the employees were paid less than the minimum wage required by the statute. Total non-payment is clearly less than the minimum.

Appellant's second contention—that it is not the party responsible for the breaches [of Section 1(b)]—is equally without merit.

Section 2 of the Act, 41 U.S.C.A. § 36, provides that failure to pay minimum wages renders the party responsible therefor to the United States for liquidated damages in an amount equal to the unpaid minimum wages to which the employees were entitled. McCall is the party responsible for the payment of minimum wages due the employees of Young-Weeks because the regulations promulgated by the Secretary [5] require that a person not otherwise qualified as a regular dealer [6] may become a government supplier on condition that such person " * * * shall be liable for the observance in the mine of all labor standards provided in Section 1 of the Act. * * * " 41 C.F.R. 50–201.604(a)(2).

McCall accepted this responsibility by entering into the four contracts to supply coal to the United States.

The contracts themselves leave no doubt but that the appellant, Jno. McCall Coal Company, Inc., was the contracting party with the United States, and under well settled principles of law it must be held responsible and liable for the breaches of its contracts. The bid forms contained spaces in which McCall could have identified itself as exclusive sales agent or authorized sales agent of Young-Weeks. This it did not do.

Affirmed.

---

5. Appellant does not question the validity of the regulations promulgated by the Secretary.

6. McCall does not question the Examiner's finding that the corporation was not a regular dealer within the meaning of the Act.