VAN HOVEN COMPANY, Inc., et al., Plaintiffs,

v.

Maurice STANS, Secretary of Commerce of the United States, and Packerland Packing Company, Defendants.

No. 3–70–Civ–261.

United States District Court, D. Minnesota, Third Division.

May 20, 1971.

828

See also 319 F.Supp. 180.

---

David W. Nord and Carl Cummins, Jr., St. Paul, Minn., for plaintiffs.

Stephen Palmer, Asst. U. S. Atty., Minneapolis, Minn., for the Secretary of Commerce.

David L. Grannis, Jr. and Patrick A. Farrell, South St. Paul, Minn., for Packerland Packing Co.

· MEMORANDUM & ORDER

DEVITT, Chief Judge.

The issue in this Declaratory Judgment Action is as to the propriety of the action of U. S. Commerce Secretary Maurice Stans in approving a government loan to Packerland Packing Company to construct a four and one-half million dollar meat packing plant in South St. Paul, Minnesota.

The plaintiffs are five meat packers operating in the South St. Paul market. The defendants are Secretary Stans and Packerland Packing Company, Inc., the intended beneficiary of the government loan under the Public Works and Economic Development Act, 42 U.S.C. §§ 3121–3226.

The plaintiffs contend that Secretary Stans was without legal authority to make the loan and that his action in approving it was arbitrary, capricious, and without factual foundation. They urge that the five present plants serving the market operate. at substantially under

capacity and that there will not be sufficient available livestock to supply an additional facility.

It must be remembered that the courts are not authorized to second-guess an administrative official in the performance of his duties. We may not substitute our judgment for his in matters such as this. Indeed the limitation of judicial authority in such matters is epitomized by the often expressed principle that the power of an administrative agency to decide questions within its jurisdiction is not limited to deciding them correctly. Minneapolis & St. Louis Railway Co. v. United States, D.C., 165 F.Supp. 893, 897 (1958) and cases there cited.

And so here our authority is limited to determining if there is warrant in the law and in the facts to support the action of Secretary Stans. In my view, there is.

The law authorizes the making of a loan such as involved here. 42 U. S.C. § 3142. The Secretary has made a judgment, based on credible evidence, that such financial assistance is needful in a qualified redevelopment area where there is substantial unemployment such as in South St. Paul. The Secretary fully complied with the law vesting him with the authority he exercised.

But plaintiffs urge that one section of the law, 42 U.S.C. § 3212, prohibits a loan such as this because "* * * there is not sufficient demand for such * * * facilities, to employ the efficient capacity of existing competitive commercial or industrial enterprises," and point to the current claimed less than capacity operations of the present five plants in support of their contention.

But the Secretary has found, in compliance with the statute, that there will be sufficient demand for the services of the contemplated additional plant.[1]

The plant is intended, it is urged, as a replacement for the now closed Swift plant, an apparently inefficient and outmoded facility, which yearly processed about the same number of livestock as is expected the new plant will process.

There was competent expert testimony, albeit contradicted, that the establishment of a new plant will increase the number of livestock moving to the South St. Paul market. There was evidence, uncontradicted, that the number of livestock on feed in Minnesota has markedly increased in the last eight years. The comparative figures from the Minnesota Department of Agriculture are contained in the footnote.[2]

The U. S. Department of Agriculture Reports, in evidence, reflect that the annual feeder cattle marketings in Minnesota have risen 47% in the past ten years, from 600,000 to 868,000 head. The evidence was uncontradicted and persuasive that the American public's consumption of red meat continues steadily upward.

True, the arguments and evidence of the plaintiffs that the establishment of a new plant will make worse a gradually deteriorating market picture for the South St. Paul market, are not without persuasion.

But the Secretary had the whole picture presented to him. He made a

---

1. A Government economist who made a study upon which the decision to grant the loan was based testified at trial that: "* * * Our decision was that based on the extended resource availability, the increase in the number of head in inventory, the historical increase in cattle on feed in Minnesota, plus that cattle group that would be available by the closing of Swifts should combine to make more than sufficient cattle within this area to serve the proposed plant."

2. *Availability of Beef Cattle on Feed*

| As of | Number of Cattle on Feed |
|---|---|
| January 1, 1964 | 487,000 |
| January 1, 1965 | 506,000 |
| January 1, 1966 | 536,000 |
| January 1, 1967 | 537,000 |
| January 1, 1968 | 585,000 |
| January 1, 1969 | 556,000 |
| January 1, 1970 | 589,000 |

judgment. It was not arbitrary and capricious. It was based on substantial, albeit not uncontradicted, evidence. The law authorized him to do what he did. It is not within my province or authority to substitute my judgment for his. The relief requested is denied.

Attorneys for the defendants will please submit suggested Findings of Fact and Conclusions of Law within seven days.