**AFTON ALPS, INC., et al.,**
**Plaintiffs,**

**v.**

**UNITED STATES of America et al.,**
**Defendants.**

**Civ. No. 5–74–43.**

United States District Court,
D. Minnesota,
Fifth Division.

Nov. 1, 1974.

Irving R. Brand, David Karan, Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Minneapolis, Minn., for plaintiffs.

Robert G. Renner, U. S. Atty., and Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for U. S.

Robert S. Fastov, Chief, Litigation and Liquidation Div., Economic Development Admin., Washington, D. C., for Dent, Blunt and EDA.

William P. Dinan, City Atty., and Robert E. Asleson, Asst. City Atty., Duluth, Minn., for Waide and Spirit Mountain Recreation Area Authority.

## MEMORANDUM OPINION

HEANEY, Circuit Judge, by designation.

Congress enacted the Public Works and Economic Development Act, 79 Stat. 552, 42 U.S.C. §§ 3121–3226, on August 26, 1965. In its prologue section to the operative provisions of the Act, Congress declared:

> * * * [T]hat the maintenance of the national economy at a high level is vital to the best interests of the United States, but that some of our regions, counties, and communities are suffering substantial and persistent unemployment and underemployment; * * * that to overcome this problem the Federal Government, in cooperation with the States, should help areas and regions of substantial and persistent unemployment and underemployment to take effective steps in planning and financing their public works and economic development; that Federal financial assistance, including grants to communities, indus-

tries, enterprises, and individuals in areas needing development should enable such areas to help themselves achieve lasting improvement and enhance the domestic prosperity by the establishment of stable and diversified local economies and improved local conditions, provided that such assistance is preceded by and consistent with sound, long-range economic planning * * *.

42 U.S.C. § 3121.

In December of 1972, the City of Duluth applied to the Economic Development Administration, the governmental agency authorized to effectuate the provisions of the Act, for a grant of approximately $600,000. The grant monies were to be used to partially finance a multimillion dollar winter and summer recreational facility. The facility, commonly referred to as the Spirit Mountain Project, would be managed and operated by the Spirit Mountain Recreation Area Authority. Following several conferences, reports and studies, the EDA, through the Assistant Secretary of Commerce, made an offer of grant of $600,000 to the City of Duluth. On August 21, 1973, the City accepted the offer.

The plaintiffs, fourteen ski resorts, have brought this action asking the Court to declare that the grant is invalid and to enjoin the defendants from disbursing or accepting the grant funds.

The plaintiffs' case revolves around the interpretation and application of Section 702 of the Act. 42 U.S.C. § 3212. The plaintiffs contend that the Assistant Secretary has not properly interpreted or applied Section 702, and that he relied upon factually erroneous information in reaching his conclusion. They argue that his decision is, for these reasons, arbitrary and capricious.[1]

The defendants dispute the plaintiffs' contentions. Moreover, they maintain that the Court lacks subject matter jurisdiction, that the plaintiffs lack standing to bring the action, that the decision of the EDA officials is nonreviewable, and that the plaintiffs' action is barred by sovereign immunity and laches.

The Court finds that it has jurisdiction under 28 U.S.C. § 1331. The plaintiffs have raised a substantial federal question concerning the interpretation and application of a law of the United States and the amount in controversy exceeds $10,000, whether measured by the amount of the grant which the plaintiffs seek to enjoin ($600,000) or the loss of business alleged to have been incurred by one or more of the plaintiffs.[2] Moreover, 42 U.S.C. § 3211 specifically provides that the Secretary is authorized to be sued in any United States District Court, and jurisdiction is conferred upon such District Court without regard to the amount in controversy.

---

1. The plaintiffs contended in their complaint that the project would not tend to improve the opportunities for the successful establishment of a commercial enterprise, would not assist in the creation of additional longterm employment opportunities in the Duluth area, would not primarily benefit longterm unemployed members of low income families or otherwise further the objectives of the Economic Opportunity Act of 1964, would not fulfill a pressing need of the area or any part thereof, and that approval of the project would be violative of Section 702 of the Act. No evidence was introduced at trial tending to establish any of the contentions other than the alleged 702 violation. No argument is made in plaintiffs' brief that the proposed grant is violative of any of the sections of the Act other than Section 702.

2. If at least one of the plaintiffs has an economic stake exceeding the jurisdictional amount, the other *named* plaintiffs may be retained under a theory of ancillary or pendent jurisdiction. Thus, the Supreme Court's holding in Zahn v. International Paper Corp., 414 U.S. 291, 94 S.Ct. 505, 38 L. Ed.2d 511 (1973), that each member of a plaintiff *class* under Rule 23(b)(3) must seek the jurisdictional amount, is not relevant here. *See,* Hart & Wechsler, The Federal Courts and the Federal System, 1171 (2d ed. 1973). *See also,* Zahn v. International Paper Corp., *supra,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d at 520–525 (Brennan, J., dissenting).

■ The plaintiffs have standing to bring this action. They are arguably within the zone of interests to be protected by the statute, and have alleged a likelihood of economic injury. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ The plaintiffs' action against the United States is dismissed on grounds of sovereign immunity, since the United States has not consented to such suit. See, Dugan v. Rank, 372 U.S. 609, 83 S. Ct. 999, 10 L.Ed.2d 15 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The action against the Economic Development Administration is dismissed for the same reason, since that entity is a non-suable executive agency of the United States. See, Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Benson v. City of Minneapolis, 286 F.Supp. 614, 619–620 (D.Minn.1968).

■ The actions against defendant Frederick B. Dent, Secretary of Commerce, and defendant William W. Blunt, Assistant Secretary of Commerce, are not barred by the doctrine of sovereign immunity and will not be dismissed.[3] The plaintiffs allege that the Assistant Secretary acted beyond his authority and that, as such, his actions were void. The claim, therefore, falls within an exception to the sovereign immunity doctrine. See, New Mexico State Game Comm'n v. Udall, 410 F.2d 1197, 1199 (10th Cir.), cert. denied, 396 U.S. 961, 90 S.Ct. 429, 24 L.Ed.2d 426 (1969); Coalition for United Community Action v. Romney, 316 F.Supp. 742, 746 (N.D. Ill.1970); Dugan v. Rank, supra 372 U. S. at 621–622, 83 S.Ct. 999, 10 L.Ed.2d 15 (dictum); Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962) (dictum); Larson v. Domestic & Foreign Commerce Corp., supra 337 U.S. at 689–690, 69 S.Ct. 1457, 93

L.Ed. 1628 (dictum). For reasons which will be apparent later in this opinion, we need not determine whether an injunction can properly be issued against the Assistant Secretary.

■ The plaintiffs' claim is not barred by laches. Under all the circumstances, it was commenced within a reasonable time.

■ The Assistant Secretary's decision on the Section 702 question is subject to judicial review.

* * * Section 701 of the Administrative Procedure Act, 5 U.S.C. § 701 (1964 ed. Supp. V), provides that the action of "each authority of the Government of the United States," * * * is subject to judicial review except where there is a statutory prohibition on review or where "agency action is committed to agency discretion by law." * * *

* * * [T]he exception for action "committed to agency discretion." This is a very narrow exception. Berger, Administrative Arbitrariness and Judicial Review, 65 Col.L.Rev. 55 (1965). The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply." S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945).

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820–821, 28 L.Ed.2d 136 (1971).

Here, as in Overton Park, there is no indication that Congress sought to prohibit judicial review. Similarly, the Assistant Secretary's decision does not fall within the exception for action "committed to agency discretion." Section 702 is not drawn in such broad terms that there is no law to apply. Its terms are clear and specific. It provides simply:

No financial assistance under this chapter shall be extended to any proj-

---

3. Hereafter, the Court will speak only of the Assistant Secretary. He authorized the

grant pursuant to a delegation of powers from the Secretary.

ect when the result would be to increase * * * the availability of services or facilities, when there is not sufficient demand for such * * * services, or facilities, to employ the efficient capacity of existing competitive commercial and industrial enterprises.

The task then is to determine whether the Assistant Secretary's decision with respect to the Section 702 question was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, § 10(e), 5 U.S.C. § 706(2)(A). Citizens to Preserve Overton Park v. Volpe, *supra,* 401 U.S. at 416, 91 S.Ct. 814, 28 L.Ed.2d 136; Environmental Defense Fund v. Corps of Engineers of the United States Army, 470 F.2d 289, 300 (8th Cir. 1972), cert. denied, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973).

### THE EDA METHOD IN APPLYING SECTION 702 WAS NOT CONTRARY TO LAW

■ After a careful review of the evidence, including that portion of the Spirit Mountain EDA file received as an exhibit, oral testimony and other exhibits, the Court finds that the action of the Assistant Secretary in approving the grant was not unlawful. That is, the method used by the EDA was not contrary to the dictates of Section 702. That method is as follows: When the projected market growth (new demand) is sufficient to absorb the output of the proposed facility (production of the applicant), Section 702 will not be violated since none of the existing market demand will be taken from competitive facilities within the market area. In this case, the EDA determined that the pro-

jected market growth within the next three years would consist of 133,000 new "skier days." It also determined that Spirit Mountain would draw 122,000 skier days within the three years following the opening of the facility. It concluded that since Spirit Mountain would not fully serve the projected new demand, Section 702 would not be violated. This method is based on the assumption that existing ski facilities have no special claim to the new business.

■ While there are a number of methods that could be used in making the Section 702 determination, and while some might be preferable to the one chosen by the EDA, the Court cannot say that the method is not a permissible one under statute. Ms. D. Patricia Keeler, *Chief of the Industries Studies Division* of the EDA since 1967, testified that she has applied this method to hundreds of projects. Moreover, the EDA has formally adopted the method in a directive.[4] The practice is of long standing and has been consistently applied over the years. Hence, as an interpretation of the statute, the method is entitled to deference by the courts. *See,* National Labor Relations Board v. Boeing Co., 412 U.S. 67, 74–75, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973); Leary v. United States, 395 U.S. 6, 25, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (dictum); Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Doe v. Department of Transportation, 412 F.2d 674, 678 (8th Cir. 1969). The method had been employed in the agency action challenged in Van Hoven Co. v. Stans, 326 F.Supp. 827 (D.Minn.1971), and upheld by Chief Judge Devitt.

■ The statute is silent on the question of whether or not existing com-

---

4. That directive further provides that no Section 702 study is required where

* * * [t]he project to be assisted is not designed to provide public works facilities in or primarily or essentially to benefit a particular firm or industry, but is designed primarily for the benefit of the community or area as a whole * * *.

Despite that provision, the EDA prepared a study here and the case was tried to this Court on the theory that a Section 702 study was required. Since Spirit Mountain is a community project, the directive would seem to exempt it from Section 702 scrutiny. However, the Court will decide the case on the assumption that a study was required.

petitors should be entitled to absorb the new growth in the market. The expertise of the agency is to be respected in resolving the ambiguity created by that silence. *See,* Board of Directors and Officers, Forbes Federal Credit Union v. National Credit Union Administration, 477 F.2d 777, 784 (10th Cir. 1973), cert. denied, 414 U.S. 924, 94 S.Ct. 233, 38 L. Ed.2d 158 (1974); Gulf Oil Corp. v. Hickel, 140 U.S.App.D.C. 368, 435 F.2d 440 (1970); Jno. McCall Coal Co. v. United States, 374 F.2d 689, 691–692 (4th Cir. 1967). Certainly, it is reasonable to conclude that Section 702 cannot be meant to proscribe all competition. There will inevitably be a tension between that section's command and the aim of the Act to promote development in economically depressed areas. In light of that tension, this Court cannot say that the EDA's interpretation permitting new applicants to serve the new growth is plainly erroneous or inconsistent with the law. This is not to say that there may never be cases in which the method adopted by the EDA is inappropriate. It is only to say that the inappropriateness has not been demonstrated here.

### THE EDA DECISION ON THE SECTION 702 QUESTION WAS NEITHER ARBITRARY NOR CAPRICIOUS

 A careful review of the record reveals that:

(1) The patrons of Spirit Mountain will be primarily weekend and day skiers, most of whom are expected to come from within its market area.

(2) The Spirit Mountain market area lies generally within a 68-mile radius of Duluth, this being the average distance that day skiers in the Great Lakes region are willing to travel for one day's skiing.

(3) It is not unreasonable to expect that the Spirit Mountain market area will develop about 133,000 new skier days within three years after the Spirit Mountain facility opens. This expecta-tion is strengthened by the many colleges in the area and the availability of night skiing.

(4) The plaintiffs claim that Spirit Mountain will compete with seventeen ski facilities in Minnesota, Michigan and Wisconsin.

(a) Seven of these facilities—Trollhaugen, Wild Mountain, Snow Crest, Birch Park, Afton Alps, Buck Hill and Red Wing Ski Corporation—are located near the Twin Cities, substantially outside the Spirit Mountain market area. These seven facilities are primarily day facilities that draw from the Twin Cities metro area. It is reasonable to conclude that the competition between Spirit Mountain and the seven Twin Cities' facilities will be minimal. It can, of course, be argued from the record that Spirit Mountain will draw weekend skiers from the Twin Cities area and will, thus, compete with the Twin Cities ski facilities. There is support for such an argument in the fact that many of the northern ski facilities draw one-half of their patrons from the Twin Cities. If one accepts that argument, however, he must also accept the fact that the Twin Cities area can reasonably be expected to develop thousands of new skier days over the next three years, an eventuality not considered by the EDA in deciding the Section 702 issue. If one accepts this premise, the number of skier days available to ski facilities in Minnesota increases, thus diminishing probability that Spirit Mountain will take business from existing Twin Cities' facilities.

(b) Only two of the seventeen facilities are located within Duluth's market area, Mt. Du Lac near Duluth and Giants Ridge in Biwabik, Minnesota. Neither facility contends that Spirit Mountain will adversely affect them, and there is some evidence in the record indicating that both expect Spirit Mountain to generate new skiers for them.

(c) Indianhead, located at Ironwood, Michigan, approximately 105 miles from Spirit Mountain, expects to benefit from

new skiers generated by Spirit Mountain.

(d) Lutsen, located 90 miles up the north shore on Lake Superior, does not have an opinion as to whether it will be adversely affected by Spirit Mountain.

(e) Sugar Hills, Quadna Mountain, Telemark and Big Powderhorn are located in northern Minnesota, Wisconsin and Michigan. All lie outside of Spirit Mountain's market area. None will compete significantly with Spirit Mountain for day skiers. The only area of significant competition will be for weekend skiers. Each of the facilities, other than Port Mountain, operated in 1973 at a high level of practical capacity on peak days including weekends: Sugar Hills at 98.9%; Quadna Mountain at 69.3%; Telemark at 85.3%; and Powderhorn at 130%. Under these circumstances and in the light of the new skier days that the record reveals will be developed in the states of Minnesota, Michigan and Wisconsin, the competition between Spirit Mountain and the four facilities for weekend skiers would not appear to be significant.

(f) Port Mountain is a relatively small facility without snow-making equipment. It apparently operates under capacity because its facilities are not competitive with others in the north country.

(g) There is no significant evidence in the record with respect to the two remaining facilities—Powder Ridge at Kimball, Minnesota, and Whitecap in Michigan. The record shows only that Whitecap is a small facility located out of the Spirit Mountain market area. The record is largely silent as to the nature of its facilities or the type of skiers that visit it. There is no evidence in the record with respect to Powder Ridge.

To summarize, the decision of EDA that a grant to Spirit Mountain would not increase the availability of ski facilities at a time when there is not sufficient demand for such facilities to employ the efficient capacity of existing competitive facilities was neither arbitrary nor capricious. To the contrary, the record as a whole amply supports the conclusion that Spirit Mountain will not significantly compete with the facilities in the Twin Cities, will probably aid facilities located in this market area and will have a minimal competitive affect on other ski facilities in northern Minnesota, Wisconsin and Michigan.

## THE AGENCY HAS NOT MADE A CLEAR ERROR OF JUDGMENT

Notwithstanding the Court's conclusion that Spirit Mountain will not have the adverse effect proscribed by Section 702, the plaintiffs contend that the agency's decision cannot be permitted to stand because the Assistant Secretary relied on erroneous data concerning the population within the market area.[5] They argue that the erroneous data inevitably led to a "clear error of judgment," Citizens to Preserve Overton Park v. Volpe, *supra* 401 U.S. at 416, 91 S.Ct. 814, 28 L.Ed.2d 136, and that the matter must be remanded to the EDA for a redetermination in light of the correct population figures. *See*, Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

■■■■■ At the outset, it is important to note that the Supreme Court has

---

5. The Keeler Report contains the statement that "there are approximately 352,000 people within a one-hour driving time of Spirit Mountain." This assertion was derived from figures supplied by the Sno-Engineering firm, and the firm had arrived at the figures by an analysis of the population in each county any part of which fell within a 50-mile radius of Duluth. Plaintiffs have presented evidence tending to show that the population within a 50-mile radius of Duluth is really closer to 224,000 and that, therefore, the basis of the agency's decision was clearly erroneous.

made it clear that in informal decision-making of this type, the agency is not required to make specific findings to support its decision. Citizens to Preserve Overton Park v. Volpe, *supra* 401 U.S. at 409, 91 S.Ct. 814, 28 L.Ed.2d 136. The Assistant Secretary made no such findings here. However, since the Keeler Report, containing the allegedly erroneous population figures, was part of the input into the decision-making process, it is a part of the record which is to be reviewed by this Court.

■ The Court finds that, even if the Assistant Secretary relied on the Keeler Report's assertion that "there are approximately 352,000 people within a one-hour driving time of Spirit Mountain," there was no clear error of judgment. As we have seen, the one-hour driving time is a flexible concept used to predict ski resort patronage by day skiers. The important concept is not how long it takes to drive from a given point to the resort, but how far day skiers are willing to drive in their pursuit of pleasure. All witnesses agreed on this point. The Court previously pointed out that this distance is about 68 miles in the Great Lakes area. The population embraced by a circle with a 68-mile radius from the Spirit Mountain project is approximately 350,000. The population figure cited in the Keeler Report is, therefore, quite accurate for purposes of applying the EDA approach to Section 702. The determination, therefore, that the growth in demand in the Spirit Mountain market area during the next three years would be at least 133,000 skier days is not clearly erroneous.[6] Even if it could be said that the agency mistakenly believed that 350,000 people lived within one hour's driving time rather than within one-

and-one-quarter hour's driving time, the Court is convinced that the outcome of the analysis would have been the same had this "error" been corrected. "[I]t would be a futile act to insist on a remand which could not meaningfully change the result." Ex-Cell-O Corp. v. National Labor Relations Board, 145 U.S.App.D.C. 396, 449 F.2d 1058, 1065 (1971). As Judge Leventhal has said:

* * * Section 10(e) of the Administrative Procedure Act expressly provides that reviewing courts shall take "due account" of the "rule of prejudicial error." 5 U.S.C. § 706 * * *. Reversal is not required by the fact that an agency made an "error" if it is shown that the error was not "prejudicial." * * * Although the standards governing its application may differ, the "harmless error" principle announced for our general jurisprudence by decision and statute * * * is applicable to the review of decisions of administrative agencies. * * *

The Supreme Court's opinions reflect the concern that agencies not be reversed for error that is not prejudicial. * * * The principle of SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 * * * (1947), does not mechanically compel reversal "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." Massachusetts Trustees of Eastern Gas and Fuel Associates v. United States, 377 U.S. 235, 248, 84 S.Ct. 1236, 12 L.Ed.2d 268 * * * (1964).

Braniff Airways, Inc. v. Civil Aeronautics Board, 126 U.S.App.D.C. 399, 379 F.2d 453, 465–466 (1967). *See also,*

6. The expert testimony concerning the projected growth in demand within various radii of Duluth establishes the following prediction of increased skier days:

Within a 50-mile radius:

| In Three Years | 103,700 |
| In Five Years | 134,000 |

Within a 55-mile radius:

| In Three Years | 119,700 |
| In Five Years | 155,600 |

Within a 60-mile radius:

| In Three Years | 138,700 |
| In Five Years | 180,300 |

Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 67, 81 S. Ct. 1357, 6 L.Ed.2d 625 (1961); Greater Boston Television Corp. v. Federal Communications Commission, 143 U.S.App. D.C. 383, 444 F.2d 841, 851 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229 2233, 29 L.Ed.2d 701 (1971); Pharmaceutical Manufacturers Association v. Gardner, 127 U.S.App.D.C. 103, 381 F. 2d 271, 281 n. 6 (1967).

The plaintiffs' request for a declaratory judgment determining that the action of the defendants was arbitrary, capricious and without rational basis is accordingly denied, and their request for a permanent injunction is also denied.

This memorandum opinion shall constitute the Court's findings of fact and conclusions of law. The Clerk is instructed to issue a judgment in favor of defendants Frederick B. Dent, William W. Blunt, and Richard Waide, in their individual and official capacities, and in favor of the Spirit Mountain Recreation Area Authority. The action against the other defendants is dismissed.

Let judgment be entered accordingly.