IN the INTEREST OF Ruby WASHINGTON:

CITY OF MILWAUKEE, Petitioner-Respondent,

v.

Ruby WASHINGTON,
Respondent-Appellant-Petitioner.

Supreme Court

No. 2005AP3141. *Oral argument November 1, 2006.
—Decided July 17, 2007.*

2007 WI 104

(Also reported in 735 N.W.2d 111.)

100

For the respondent-appellant-petitioner there were briefs by *William J. Tyroler* and *Karl Otto Rohlich*, assistant state public defenders, and oral argument by *William J. Tyroler.*

For the petitioner-respondent there was a brief and oral argument by *Stuart S. Mukamal*, assistant city attorney, with whom on the brief was *Grant F. Langley*, city attorney.

An amicus curiae brief was filed by *Laurence J. Dupuis* and *ACLU WI Foundation*, Milwaukee; *Colleen D. Ball* and *Appellate Counsel, S.C.*, Wauwatosa, on behalf of The American Civil Liberties Union of Wisconsin Foundation, Inc.

An amicus curiae brief was filed by *Kimberly Allegretti Nass* and *Washington County Attorneys Office,* West Bend; *Steven J. Rollins* and *Manitowoc County Corporation Counsel,* Manitowoc, on behalf of the Wisconsin Association of County Corporation Counsels.

¶ 1. LOUIS B. BUTLER, JR., J. Ruby Washington seeks review of a published decision of the court of appeals[1] affirming a circuit court order confining her to the Milwaukee County Criminal Justice Facility ("CJF") for failure to comply with prior court orders for treatment of tuberculosis.[2] The Milwaukee County Circuit Court, Honorable Clare L. Fiorenza, found that if Washington continued to refuse treatment she would become contagious and threaten the public health, and issued an order of confinement pursuant to Wis. Stat. § 252.07(9) (2005–06)[3], the long-term confinement provisions of the tuberculosis control statute. Washington asked to be confined to Aurora Sinai Medical Center ("Medical Center"), but the circuit court ordered her confined to the CJF.

¶ 2. The court of appeals affirmed the circuit court on two independent grounds. *City of Milwaukee v. Ruby Washington,* 2006 WI App 99, 292 Wis. 2d 258,

---

[1] *City of Milwaukee v. Washington,* 2006 WI App 99, 292 Wis. 2d 258, 716 N.W.2d 176.

[2] The City of Milwaukee contends that the appeal is moot because Washington was released from jail confinement on May 26, 2006, and any decision issued by this court will have no practical effect upon her confinement. While we agree that our decision is moot as to Washington, we will proceed to the merits because the issues raised in this appeal are of great public concern and are likely to recur. *See State v. Michael S.,* 2005 WI 82, ¶ 6, 282 Wis. 2d 1, 698 N.W.2d 673.

[3] All references to the Wisconsin Statutes are to the 2005–2006 version of the statutes unless otherwise noted.

716 N.W.2d 176. First, the court of appeals agreed that Wis. Stat. § 252.07(9) authorized Washington's confinement to the CJF, concluding that statutory language referring to "no less restrictive alternative" applied only to the fact of confinement itself, and not the place of confinement. *Washington,* 292 Wis. 2d 258, ¶ 12. Thus, the court of appeals concluded that once confinement is determined to be necessary, the statute does not require placement to the least restrictive facility. *Id.* It further concluded that a circuit court may consider the relative cost of different placement options when determining the place of confinement. *Id.,* ¶ 14. Second, the court of appeals concluded that Wis. Stat. § 785.04(1), the remedial contempt statute, provided the circuit court with an alternate basis to confine Washington to the CJF. *Id.,* ¶¶ 18–19.

¶ 3. We conclude that Wis. Stat. § 252.07(9)(a) authorizes confinement to a jail for a person with noninfectious tuberculosis who is at a high risk of developing infectious tuberculosis and fails to comply with a prescribed treatment regimen, provided the jail is a place where proper care and treatment will be provided and the spread of disease will be prevented, and that no less restrictive alternative exists to jail confinement. We further conclude that a circuit court may take into account the cost of placement options when determining the place of confinement under § 252.07(9), but only after determining that two or more placement options fulfill the statutory requirements of proper medical treatment and disease prevention, and that none of these options is significantly less restrictive than the other(s).

¶ 4. In this case, the circuit court engaged in a careful, deliberative process in which it demonstrated appropriate concern for both the public health of the

103

community and the care and treatment of Ruby Washington. We conclude the circuit court did not erroneously exercise its discretion in ordering Washington's confinement to the CJF. We therefore affirm on these grounds the court of appeals' opinion affirming the circuit court's order of confinement.[4]

¶ 5. We further conclude that Washington's confinement was not authorized by the remedial contempt statute, Wis. Stat. § 785.04(1), and disavow the court of appeals' discussion of contempt as a separate basis for confinement to jail in this case. *Washington,* 292 Wis. 2d 258, ¶¶ 16–19.

I

¶ 6. On May 19, 2005, Ruby Washington was evaluated for tuberculosis at the Keenan Health Center Tuberculosis Control Clinic ("TB Clinic"), operated by the City of Milwaukee Health Department ("Department"). Sputum specimens were taken and tested for tuberculosis. On June 17, 2005, Washington was diagnosed with tuberculosis. Washington received tuberculosis medication at the TB Clinic on June 21, 2005. Washington was living in a shelter and had no fixed address at the time. TB Clinic staff provided Washington with bus tickets to ensure that she would return for periodic directly-observed therapy.[5] Washington did not

---

[4] In future cases, we expect that courts determining place of confinement for persons subject to a petition under Wis. Stat. § 252.07(9) will apply the methodology set forth in this opinion.

[5] Wisconsin Admin. Code § HFS 145.08(5) defines "directly-observed therapy" as "ingestion of prescribed anti-tuberculosis medication that is observed by a health care worker or other responsible person acting under the authority of the local health department."

show up for her next two appointments to receive her medication, and could not be located.

¶ 7. The Department issued Washington a directly-observed therapy order ("treatment order") and an isolation order on July 27, 2005, which it intended to serve upon Washington as soon as she could be located. On August 22, 2005, a nurse at the Medical Center informed the Department that Washington had been admitted to the hospital and was giving birth to a baby. The Department served the orders for treatment and isolation on Washington later that day, and requested that Washington stay at the Medical Center.

¶ 8. The next day, after Washington threatened to leave the Medical Center, the City of Milwaukee petitioned the circuit court under Wis. Stat. § 252.07(9)[6] for enforcement of the treatment and isolation orders. The Milwaukee Circuit Court, Honorable Maxine A. White,

[6] Wisconsin Stat. § 252.07(9) provides, in part:

(a) The department or a local health officer may petition any court for a hearing to determine whether an individual with infectious or suspect tuberculosis should be confined for longer than 72 hours in a facility where proper care and treatment will be provided and spread of the disease will be prevented. The department or local health officer shall include in the petition documentation that demonstrates all of the following:

1. That the individual named in the petition has infectious tuberculosis; that the individual has noninfectious tuberculosis but is at high risk of developing infectious tuberculosis; or that the individual has suspect tuberculosis.

2. That the individual has failed to comply with the prescribed treatment regimen or with any rules promulgated by the department under sub. (11); or that the disease is resistant to the medication prescribed to the individual.

3. That all other reasonable means of achieving voluntary compliance with treatment have been exhausted and no less restrictive alternative exists; or that no other medication to treat the resistant disease is available.

appointed an attorney from the State Public Defender's Office to represent Washington. *See* Wis. Stat. § 252.07(9)(d). Counsel for the parties reached a stipulation whereby Washington would remain confined at the Medical Center, at least until a status hearing on September 27, 2005, at which point the circuit court would assess the progress of Washington's treatment and her possible release from hospital confinement.

¶ 9.   At the September 27, 2005, hearing before the circuit court, Honorable Clare L. Fiorenza, the City noted that Washington's recovery had progressed to the point where the Department believed that Washington no longer needed to be confined for medical reasons. Counsel for the parties reached a second stipulation under which Washington would be released from confinement at the Medical Center, but would report to the TB Clinic at regular intervals to receive medication by directly-observed therapy, consistent with the July 27 order. Additionally, the stipulation required that Washington follow a nine-month treatment plan and live with her sister, Alwiller Washington, during that time. The stipulation provided that

> in the event that ... Washington fails to fully and completely comply with the provisions of this Order [the stipulation], she may be subject to imprisonment, to renewed isolation and inpatient confinement pursuant to Wis. Stat. §§ 252.07(8) and (9) and/or to such other and additional sanctions for contempt of court as this Court may determine.

¶ 10.   On September 29, 2005, Alwiller Washington ("Alwiller") called Irmine Reitl, program manager of the TB Clinic, to report that Ruby Washington had left

---

4. That the individual poses an imminent and substantial threat to himself or herself or to the public health.

Alwiller's residence shortly after being released from the Medical Center on the 27th, and had yet to return. Alwiller said a friend had spotted (Ruby) Washington near the Jewel/Osco store on North 35th Street in Milwaukee that morning. Reitl and an officer of the Milwaukee Police Department drove to the Jewel/Osco and found Washington in the store parking lot. Reitl caught up with Washington and talked with her on the curb for a few minutes. In an affidavit to the court, Reitl averred that Washington "said many things that [Reitl] was unable to understand" and that Washington "seemed less than coherent in her thoughts."

¶ 11. A Milwaukee Police Department squad car arrived in the parking lot, and Washington left the area and entered a convenience store at the corner of 36th Street and North Avenue. Two additional squad cars arrived, and officers detained Washington. Reitl averred that

> Ruby was crying and yelling while the police spoke to her. After a few minutes, Ruby was handcuffed and placed in a squad car. While in the police car, she continued to be agitated and was kicking her feet out of the squad car window and kicking the inside roof of the squad car, all the while loudly screaming, yelling and crying.

Washington received an assessment from the Medical Center and was transported to the CJF. The City filed a "Motion of Contempt" with the circuit court seeking Washington's confinement to the CJF for noncompliance with the prior treatment order. Washington was held in the CJF pending a court hearing scheduled for October 3, 2005, on the City's motion.

¶ 12. On October 1, 2005, Washington was mistakenly released from the CJF and went missing. The October 3 hearing was adjourned because the City had

107

yet to locate Washington. On the morning of October 5, Washington was found at the home of a friend, and was detained by police. She was taken to the Medical Center to be evaluated, and then held at a district police station for a period of hours.

¶ 13.   Judge Fiorenza convened a hearing later that afternoon at which Washington contested the City's allegation that she was in violation of the treatment order. The City called Irmine Reitl of the TB Clinic, who explained that Washington was diagnosed with pulmonary tuberculosis, a disease that becomes colonized in the lungs and may be transmitted by coughing, sneezing or otherwise forcing bacteria out of the lungs and into the air. She noted that Washington had one previous bout with tuberculosis, for which she had been successfully treated. She stated that for patients like Washington who have recurrent tuberculosis, a nine-month course of treatment is necessary, which starts with administering a regimen of four medications at regular intervals. Reitl testified that she believed Washington was not presently contagious, but that if she did not resume treatment, she would become contagious, perhaps within a week, and "certainly within a month." Reitl explained that "for [Washington's] own health and everyone's health in the community," Washington "must strictly adhere to the treatment regimen."

¶ 14.   Reitl gave testimony about Washington's combativeness when detained by officers on September 29. Reitl also testified that Washington was "incoherent" when Reitl encountered her on September 29, and Reitl believed, based on her training and experience as a nurse, that Washington was "under the influence of something."

¶ 15. Washington testified on her own behalf. Washington admitted that she stayed at a friend's house and not with her sister upon her release from the Medical Center on September 27. She also admitted that she had not taken her tuberculosis medication on October 2 as ordered because "[i]t had slipped [her] mind." Based on these statements, which the circuit court determined were admissions of noncompliance, the court found Washington to be in violation of the prior treatment orders. The circuit court concluded that, as a consequence, confinement was appropriate.

¶ 16. The City asked that Washington be confined to the CJF. The City stated that it "d[id] not believe that there [was] any facility . . . other than the [CJF] that would serve the purpose of protecting the public health under these very unusual and extraordinary circumstances."

¶ 17. Counsel for Washington requested confinement to the Medical Center, arguing that her prior placement there "worked out very well and she was under guard and I would assume she would still be under guard." Alternatively, counsel asked that the circuit court consider confining Washington to the Milwaukee County Mental Health Complex (Mental Health Complex). Counsel urged the court to consider "any alternative other than jail . . . . The [Medical Center] situation worked. The Court could order her there for a period while other alternatives are explored."

¶ 18. The City opposed Washington's confinement to the Mental Health Complex, arguing that security there was "not assured." The City also opposed placement in the Medical Center, arguing "it would be grossly unfair to the taxpayers of this City to require that [Washington] be placed under police guard on a 24/7 basis, which would be required for a period of nine

months. The jail already has security. It would not cost our taxpayers any more." Counsel for Washington responded that cost to taxpayers was not a permissible factor in a Wis. Stat. § 252.07(9) confinement proceeding.

¶ 19. The circuit court considered the City's request to confine Washington, and determined that it would proceed under Wis. Stat. § 252.07(9), the long-term confinement subsection of the tuberculosis control statute, and not under Wis. Stat. § 785.04(1), the remedial contempt statute:

> THE COURT: Well, actually, you know, I was reading over the statute as to this type of hearing because it is an unusual type of action. It's under [sec.] 252.05 of the statutes regarding tuberculosis. And that statute does allow the Court to confine a person for the treatment of the tuberculosis. What the Court—What the statute requires is that if I'm going to order a person in confinement more than six months, I have to have a review every six months if I'm going to order her confined. I don't know if that's the—
>
> [CITY ATTORNEY]: That's exactly how we're proceeding.
>
> THE COURT: This is the only way I know how to proceed is under this statute because it's a specific statute if someone has tuberculosis.
>
> [CITY ATTORNEY]: That's what I'm asking the Court proceed under. This statute, no other.
>
> THE COURT: Yeah. And I don't know—really know if the Court has to find contempt per se . . . . You know, [Wis. Stat. § 252.07(9)] allows for the Court to confine an individual. That's how I read the statute . . . .
>
> [CITY ATTORNEY]: That's how I would read it, your Honor. The only reason that I brought it in the form of

a [motion for] contempt was because we did have a prior order that we contend was violated. But in the alternative, even if that weren't the case, if the case is serious enough, I believe—I think it's 252.07(8) and (9) would be sufficient.

The circuit court's written order of confinement stated that Washington "is and remains a threat to the public health and safety as a consequence of her failure to comply with" the court's previous treatment orders. The court's order did not reference contempt.

¶ 20.  The circuit court found Washington to be in violation of the prior treatment orders based in part on Washington's admissions that she did not stay with her sister upon her release from the Medical Center, and that it had "slipped her mind" to take her medication. The court found that "[t]here is a huge threat to our community if Miss Washington is walking around our community not taking her medicine for tuberculosis." The court determined that "by not taking [her] medication," Washington was "making decisions for other people in our community. She's becoming a huge health risk."

¶ 21.  The circuit court rejected Washington's request that she be confined to the Medical Center, citing fiscal reasons, in part:

With respect to the order that I place a guard at the hospital and allow her to stay at the hospital for the remainder of her treatment[,] I refuse to require taxpayers to pay 24 hour around the clock guard at her door to make sure she stays put. I don't think that's appropriate.

The court also rejected confinement to the Mental Health Complex, stating:

If your client for whatever reason would qualify to go to the mental health complex, that's fine with me, but I'm not ordering that she be placed there . . . . I don't know what the qualifications are for somebody to be placed there, and I have none of that information in front of me.[7]

¶ 22. The circuit court ordered Washington confined to the CJF for an indeterminate period of time, with a review of her confinement in six months, pursuant to Wis. Stat. § 252.07(9). The circuit court stated that "the [CJF] certainly qualifies" as "a facility where treatment can be rendered." Addressing Washington's counsel, the court stated "if you can find some other locked facility for your client [than the CJF] . . . the Court would be happy to order her placed somewhere else, and I'm sure the City would agree." The court added:

If any kind of change of circumstances come[s] up, you bring the matter and I'll hear this matter . . . on very short notice . . . . If you find some other place to have her placed, you want me to order something, sir, I'll be happy to look at whatever you have found.

¶ 23. Washington appealed to the court of appeals, challenging only her placement to the CJF instead of a less restrictive facility, and not whether the court had grounds to order her confinement. She contended that Wis. Stat. § 252.07(9) required that confinement be to the least restrictive place available, that the Medical Center was suitable and less restrictive

---

[7] For reasons that are unclear from the record and filings, Washington appears to have abandoned the Mental Health Complex as an alternate less restrictive place of confinement to jail. Her briefs focus exclusively on the Medical Center as the alternate less restrictive place of confinement.

than the CJF, and that the circuit court erred in considering fiscal matters in making its confinement decision. The court of appeals ordered briefing on several issues, including whether "this may be an appeal from what is functionally a contempt order."

¶ 24.   The court of appeals unanimously affirmed the circuit court, concluding that "no less restrictive alternative" language in Wis. Stat. § 252.07(9)(a) applied to the fact of confinement only, and not to the place of confinement. *Washington,* 292 Wis. 2d 258, ¶ 12. The court of appeals further concluded that a circuit court may consider the cost to taxpayers in determining the place of confinement under Wis. Stat. § 252.07(9).

¶ 25.   A majority of the panel concluded that the order of confinement was also lawful under Wis. Stat. § 785.04(1), which authorizes orders of remedial contempt. *Id.,* ¶ 19. One judge dissented as to this point. Washington seeks review of the decision of the court of appeals affirming the circuit court's order of confinement to jail.

II

■■■■■

¶ 26.   A circuit court's decision concerning where to confine a person with tuberculosis who fails to comply with a prescribed treatment regimen is discretionary. "A proper exercise of discretion requires that the trial court rely on facts of record, the applicable law, and, using a demonstrable rational process, reach a reasonable decision." *State v. Manuel,* 2005 WI 75, ¶ 24, 281 Wis. 2d 554, 697 N.W.2d 811. Whether the circuit court applied the correct legal standard is a question of law that we review de novo. *Landwehr v. Landwehr,* 2006 WI 64, ¶ 8, 291 Wis. 2d 49, 715 N.W.2d 180.

¶ 27. This case requires us to interpret the long-term confinement provisions of the tuberculosis control statute, Wis. Stat. § 252.07(9), and the remedial contempt statute, Wis. Stat. § 785.04(1). Statutory interpretation is a matter of law that is subject to de novo review. *See Landwehr,* 291 Wis. 2d 49, ¶ 9.

### III

¶ 28. The tuberculosis control section of the communicable disease chapter of the Wisconsin statutes, Chapter 252, authorizes the confinement of an individual with tuberculosis under certain circumstances. The statute contains subsections that set forth procedures for confinement of persons with tuberculosis for up to 72 hours, Wis. Stat. § 252.07(8), and for periods of indeterminate length, § 252.07(9).

¶ 29. Wisconsin Stat. § 252.07(8) permits the Wisconsin Department of Health and Family Services ("DHFS") or a local health officer[8] to order the confinement of a person with tuberculosis. Under this subsection, the DHFS or local health officer must notify a court in writing of the confinement, and include the following in its filing: (1) A statement of a doctor or advanced practice nurse prescriber that the person has infectious tuberculosis or suspect tuberculosis;[9] (2) evidence that the person has refused to follow a prescribed treatment regimen, or, if the person has suspect tuber-

---

[8] "Local health officer" means "the health officer who is in charge of the local health department." Wis. Stat. § 250.01(5).

[9] Wisconsin Stat. § 252.07(1g) defines "infectious tuberculosis" and "suspect tuberculosis" as follows:

(a) "Infectious tuberculosis" means tuberculosis disease of the respiratory tract, capable of producing infection or disease in

culosis, has refused to undergo a medical examination; and (3) a statement that the person poses an imminent and substantial threat to himself or herself or to the public health. A law enforcement officer or other authorized person must transport, when necessary, the person subject to a confinement order under § 252.07(8), "to a facility that [DHFS] or [the] local health officer determines will meet the individual's need for medical evaluation, isolation and treatment." § 252.07(8)(b). A person may not be confined for more than 72 hours under § 252.07(8), excluding Saturdays, Sundays and legal holidays, "without a court hearing under sub. (9) to determine whether the confinement should continue." § 252.07(8)(c).

¶ 30.   Under Wis. Stat. § 252.07(9)(a),

[t]he [DHFS] or a local health officer may petition any court for a hearing to determine whether an individual with infectious or suspect tuberculosis should be confined for longer than 72 hours in a facility where proper care and treatment will be provided and spread of the disease will be prevented.[10]

others as demonstrated by the presence of acid-fast bacilli in the sputum or bronchial secretions or by chest radiograph and clinical findings.

(d) "Suspect tuberculosis" means an illness marked by symptoms and laboratory tests that may be indicative of tuberculosis, such as a prolonged cough, prolonged fever, hemoptysis, compatible roentgenographic findings or other appropriate medical imaging findings.

[10] We note that the first part of Wis. Stat. § 252.07(9)(a) refers to persons with infectious tuberculosis and suspect tuberculosis, but does not mention persons with noninfectious tuberculosis who are at a high risk of developing infectious tuberculosis. Section 252.07(9)(a) cannot be read, however, without looking at the remainder of paragraph (9)(a). We construe § 252.07(9)(a) as applying to persons mentioned in

The statute further provides that DHFS or a local health officer "shall include in the petition documentation that demonstrates all of the following:" (1) the subparagraph (9)(a)1. who suffer from noninfectious tuberculosis who are at a high risk of developing infectious tuberculosis.

Wisconsin Stat. § 252.07(9)(a)1. states that the petition seeking confinement must demonstrate either that the person has infectious tuberculosis, suspect tuberculosis or "that the individual has noninfectious tuberculosis but is at high risk of developing tuberculosis." This portion of subdivision 1., which immediately follows paragraph (a), would be rendered meaningless surplusage if § 252.07(9)(a) were not construed to include persons with "noninfectious tuberculosis" who are at a high risk of becoming infectious. *See Mueller v. McMillian Warner Ins. Co.*, 2006 WI 54, ¶ 27, 290 Wis. 2d 571, 714 N.W.2d 183 ("A statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect.") (citation omitted). There is absolutely no reason to include this category of persons in a petition for confinement if that person cannot be confined under the statute. Such a reading would render the statute nonsensical.

The remainder of Wis. Stat. § 252.07(9)(a) makes it clear that, with respect to a person with noninfectious tuberculosis at a high risk of developing tuberculosis who has a nonresistant form of the disease, the petition must allege under subdivision (9)(a)2. that the individual has failed to comply with the prescribed treatment regimen or rules promulgated by the DHFS. The petition must further, under subdivision (9)(a)3., allege that all other reasonable means of achieving voluntary compliance have been exhausted and no less restrictive alternative exists. Finally, under subdivision (9)(a)4., the petition must allege that the individual poses an imminent and substantial threat to himself or herself or to the public health. There is no point in including these allegations in a petition seeking confinement unless the court has the power to act on the petition and order confinement. The introductory portion of § 252.07(9)(a) must be read with the remainder of the paragraph if the statute is to make any sense.

116

person has infectious tuberculosis, has noninfectious tuberculosis but is at a high risk of developing infectious tuberculosis or has suspect tuberculosis; (2) the person "has failed to comply with the prescribed treatment regimen . . . or that the disease is resistant to the medication prescribed" to the person; (3) "all other reasonable means of achieving voluntary compliance with treatment have been exhausted and no less restrictive alternative exists; or that no other medication to treat the resistant disease is available"; and (4) the person "poses an imminent and substantial threat to himself or herself or to the public health." § 252.07(9)(a)1.-4. A person confined under § 252.07(9) "shall remain confined until the department or local health officer . . . determines that treatment is complete or that the individual is no longer a substantial threat to himself or herself or to the public health." § 252.07(9)(c). If the person is to be confined for more than six months, "the court shall review the confinement every [six] months." *Id.* DHFS is authorized under § 252.07(11) to promulgate rules to assist in the administration and enforcement of the section, which are contained in Wis. Admin. Code §§ HFS 145.08–145.13 (Dec. 2003).[11]

In addition, a construction that did not include such persons would exempt from the tuberculosis control statute an entire category of persons with tuberculosis who pose a greater public health threat than persons with "suspect tuberculosis." Such a result would be absurd and contrary to the public health objectives of the statute. *See Strenke v. Hogner,* 2005 WI 25, ¶ 48, 279 Wis. 2d 52, 694 N.W.2d 296 ("Laws must be interpreted, considering the legal and practical consequences, to avoid unreasonable and absurd results.") (citation omitted).

[11] All references to Wis. Admin. Code § 145 are to the version published December 2003 in the administrative register, No. 576.

117

## A

¶ 31.  Washington does not challenge the circuit court's basis for ordering her confinement under Wis. Stat. § 252.07(9). She asserts only that the court lacked authority under the statute to order confinement to the CJF. Washington first contends that a jail is not a "facility" as the term is used in § 252.07(9)(a), which authorizes confinement to a "facility where proper care and treatment will be provided and spread of the disease will be prevented." Washington disputes the court of appeals' conclusion that the absence of an explicit bar on jail confinement makes jail a permissible placement option, *see Washington,* 292 Wis. 2d 258, ¶ 12, asserting that the absence of an express authorization of jail confinement demonstrates that it is an impermissible placement option, given the statute's nonpunitive, public health purpose. Further, Washington notes that § 252.07(8), like § 252.07(9), also authorizes confinement to a "facility." She argues that to construe "facility" to include a jail would give DHFS and local health officers the authority under § 252.07(8) to confine a person to jail for up to 72 hours without prior judicial approval, a result Washington asserts the legislature would never have intended.[12]

■

¶ 32.  When interpreting a statute, we "begin[] with the language of the statute. If the meaning of the

[12] The City correctly notes that Washington conceded before the court of appeals that a jail was a "facility" under Wis. Stat. § 252.07(9)(a), and contends that Washington has therefore waived the right to argue otherwise here. For the sake of clarifying the law, we chose to address the question of whether a jail is a "facility" under this statute. *See Clean Wisconsin, Inc. v. Pub. Serv. Comm'n of Wisconsin,* 2005 WI 93, ¶ 270, 282 Wis. 2d 250, 700 N.W.2d 768 (stating that waiver is a rule of

statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). In general, statutory language is given its common, ordinary and accepted meaning. *See id.* We often consult a recognized dictionary to determine the common, accepted meaning of a word. *Robin K. v. Lamanda M.,* 2006 WI 68, ¶ 16, 291 Wis. 2d 333, 718 N.W.2d 38 (citations omitted). However, when construing a word or phrase that is a legal term of art, we give the word or phrase its accepted legal meaning. *Wis. Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612; *see also* Wis. Stat. § 990.01(1). We do not search for statutory meaning in extrinsic sources of interpretation such as legislative history unless the statutory language is ambiguous, "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." *Kalal,* 271 Wis. 2d 633, ¶¶ 46, 51 (citations omitted).

¶ 33. To determine whether Wis. Stat. § 252.07(9)(a) permits confinement to a jail for a person with noninfectious tuberculosis with a high risk of developing infectious tuberculosis who is noncompliant with a prescribed treatment regimen, we begin with the statutory language, considering the meaning of operative terms singly, and in relation to the statute as a whole. *See Kalal,* 271 Wis. 2d 633, ¶ 46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation, but as a part of the whole."). The statute provides that the place to which a person with infectious tuberculosis, noninfectious tuberculosis with a high risk

judicial administration, and as such, a reviewing court has the inherent authority to disregard a waiver and address the merits of an unpreserved issue).

of developing infectious tuberculosis, or suspect tuberculosis who fails to comply with a prescribed treatment regimen may be confined is "a facility where proper care and treatment will be provided and spread of the disease will be prevented." § 252.07(9)(a). Because Washington had noninfectious tuberculosis but was at a high risk of developing tuberculosis,[13] we address only whether § 252.07(9)(a) authorizes placement to jail for persons with noninfectious tuberculosis who are at a high risk of developing tuberculosis.[14]

¶ 34. While Wis. Stat. § 252.07(9)(a) does not explicitly authorize placement in jail of persons with noninfectious tuberculosis who are noncompliant with a prescribed treatment regimen, the plain language of the statute also does not preclude such a placement. The statute authorizes confinement to a "facility," a word not defined in Chapters 250 (health administration) or 252 (communicable diseases) of the statutes, nor in the tuberculosis subchapter of the administrative code. We therefore turn to a dictionary to ascertain the meaning of the word. *See Landwehr*, 291 Wis. 2d 49, ¶ 16. *Webster's* defines "facility" as "something (as a hospital, machinery, plumbing) that is built, constructed, installed or established to perform some particular function or to serve or facilitate some particular end." *Webster's Third New International Dictionary*

---

[13] For the sake of readability, we refer to persons with "noninfectious tuberculosis who are at a high risk of developing tuberculosis" as persons with "noninfectious tuberculosis" in the remainder of this opinion.

[14] The issue of whether jail is a place of confinement authorized by the statute for persons with infectious or suspect tuberculosis is not before us. The issue we have addressed involves persons with noninfectious tuberculosis who are at a high risk of developing tuberculosis.

812–13 (1986). Under this commonly accepted meaning of the term, "facility" is broad enough to encompass many placement options, including jail.

¶ 35. The use of the word "confine" in Wis. Stat. § 252.07(9)(a) further indicates that jail is a placement option permitted for persons with noninfectious tuberculosis who are noncompliant with a prescribed treatment regimen. "Confine" is not defined within Chapters 250 (health administration) nor 252 (communicable diseases) of the Wisconsin Statutes. The tuberculosis control subchapter of the administrative code defines "confinement" as "restriction of a person with tuberculosis to a specified place in order to prevent the transmission of the disease to others, to prevent the development of drug-resistant organisms or to ensure that the person receives a complete course of treatment." Wis. Admin. Code § HFS 145.08(2). This definition essentially repeats the language of § 252.07(9)(a), which provides that the facility must be one in which "proper care and treatment will be provided and spread of the disease will be prevented."

¶ 36. Elsewhere in Wis. Stat. § 252.07 and in other sections of Chapter 252, "isolate" and "quarantine," or variants of these terms, are used rather than "confine." Section 252.07(1g)(c) defines "isolation" as "the separation from other persons of a person with infectious tuberculosis in a place and under conditions that prevent the transmission of infection." The term "quarantine" is not defined in Chapters 250 or 252. *Webster's* definition of "quarantine" is "to isolate as a precaution against contagious disease." *Webster's Third New International Dictionary* 1859 (1986).

¶ 37. By contrast, the word "confine" has a somewhat different meaning than "isolate" or "quarantine."

*Webster's* defines "confine" as "to keep in narrow quarters," listing "imprison" as a synonym. *Webster's Third New International Dictionary* 476 (1986). "Confine" thus connotes not only isolation, but suggests something about the nature of the place to which a person may be isolated or quarantined that is consistent with placement in jail. Because the legislature in Wis. Stat. § 252.07(9)(a) did not use "isolate" or "quarantine," terms used frequently in § 252.07 and throughout Chapter 252, but used "confine" instead, we presume that the legislature was aware of the precise meanings of these terms and intended a different meaning by use of "confine." *See Landwehr,* 291 Wis. 2d 49, ¶ 27. We conclude that, together, the commonly accepted meanings of "facility" and "confined" indicate that the legislature intended jail to be a permissible placement option under Wis. Stat. § 252.07(9)(a) for persons with noninfectious tuberculosis who are noncompliant with a prescribed treatment regimen, provided that "no less restrictive alternative exists" to such placement, *infra,* ¶¶ 48–59, and that the particular jail to which a person is to be confined is a place where proper care and treatment will be provided and spread of the disease will be prevented, *infra,* ¶ 44.[15]

¶ 38.   We find support for this interpretation in the legislative history of the statute. *See Kalal,* 271 Wis. 2d 633, ¶ 51 ("[L]egislative history is sometimes consulted to confirm or verify a plain-meaning interpretation.") (citations omitted). Subsections (8) and (9) of Wis. Stat. § 252.07 were created in a 1999 revision of the tuberculosis control statute, authored at the re-

---

[15] This assumes, of course, that the circuit court has already found that the person poses an imminent and substantial threat to himself or herself or to the public health. Wis. Stat. § 252.07(9)(a)4.

quest of the DHFS and included in the biennial budget bill. *See* 1999 Wis. Act 9, §§ 2400rn, 2400ro. In a memo addressed to the legislative drafting attorney critiquing an early draft of the proposal, a Department of Administration ("DOA") official suggested that the revised statute include a definition of "facility": "The [DOA] would like to have a definition of 'facility' which could include something other than a health care facility. For example, if the person is incarcerated the facility would be a jail, which would be treating the person for [tuberculosis]." DOA Memo to Legislative Reference Bureau, p. 1, 1/20/99, Drafting File of 1999 LRB-0183. The drafting attorney responded: "[P]lease note that I did not include a definition of 'facility' because I was unsure how the department wanted it defined (*other than to make sure it included a penal facility*). I do not believe it's a problem to leave it undefined. *It would just take a rather broad dictionary definition.*" Drafter's Note, p. 1, 1/25/99, Drafting File of 1999 LRB-0183 (emphases added). As the bill's authors anticipated, we have applied the dictionary definition of "facility" and concluded that the statute authorizes jail as a place of confinement. The above exchange indicates that the authors of the bill intended jail to be a permissible place of confinement and treatment for persons with noninfectious tuberculosis who are noncompliant with a prescribed treatment regimen.[16]

---

[16] One might suggest that this legislative history indicates only that the bill's authors intended jail to be a permissible place of confinement for persons who contract tuberculosis while incarcerated. However, this view would suggest a double standard for tuberculosis treatment that would rest on the following untenable interpretation of Wis. Stat. § 252.07(9)(a): For incarcerated persons, jail is "a facility where proper care and treatment will be provided and spread of the disease will be

¶ 39.   Washington contends that because the purpose of confinement for those with tuberculosis who have not complied with a treatment regimen is nonpunitive, Wis. Stat. § 252.07(9)(a) should be construed to preclude confinement to a jail in the absence of express statutory authorization for such a placement. We agree that the purpose of any placement is not to punish the noncompliant person for failing to follow a prescribed treatment regimen, but to provide treatment and to prevent him or her from infecting others. The statutory scheme ensures that jail is not a placement of first resort, but rather is permitted only in cases in which no less restrictive alternate placement is available. Additionally, the *particular* facility to which a person is to be confined, whether a penal institution or other type of facility, must be a place where proper care and treatment will be provided and spread of the disease will be prevented.

¶ 40.   Washington and amicus the American Civil Liberties Union also argue that a penal facility is not "a facility where proper care and treatment will be provided and spread of the disease will be prevented" because the rate of infection is reportedly significantly higher in correctional facilities than among the general population, and the dense congregation of individuals in a jail increases risk of transmission.[17] We take these

prevented," but for persons not already incarcerated it is not. Of course, persons who contract tuberculosis in a penal facility are presumably there for a criminal justice reason, while a person with noninfectious or suspect tuberculosis who is noncompliant with prescribed treatment regimen is there only to ensure compliance with the treatment regimen and prevention of the spread of the disease.

[17] *See* Lawrence O. Gostin, *"The Resurgent Tuberculosis Epidemic in the Era of AIDS:   Reflections on Public Health, Law and Society,"* 54 Md. L. Rev. 1, 51 (1995).

concerns seriously. Nevertheless, the legislature has provided that confinement is an option, provided all the statutory requirements have been met.[18]

¶ 41. While the statute's plain language and legislative history demonstrate the legislature contemplated confinement to jail as a category of placement for persons with noninfectious tuberculosis who are noncompliant with a prescribed treatment regimen, a confining court must still determine whether the *particular* place of confinement is "a facility where proper care and treatment will be provided and spread of the disease will be prevented." Wis. Stat. § 252.07(9)(a). If conditions at a particular jail (or other facility) are such that proper care and treatment would be unavailable, or contrary to the prevention of the spread of the disease, such a placement would not be authorized under § 252.07(9)(a). Whether a facility meets these requirements is a fact-intensive question and is addressed to the circuit court's discretion.

B

¶ 42. Washington next argues that if jail is a permissible place of confinement under Wis. Stat. § 252.07(9), confinement to jail is not permitted whenever some less restrictive placement is available, citing

---

[18] We emphasize that this opinion applies only to persons with noninfectious tuberculosis—that is, persons who will not become infectious if they receive proper treatment and are forced to comply with a prescribed treatment regimen. For persons with infectious tuberculosis or with the most highly drug-resistant strains of the disease, we doubt that jail would be an appropriate placement under Wis. Stat. § 252.07(9)(a) because such a placement would almost certainly increase, not prevent, the risk of transmission of the disease.

"no less restrictive alternative" language in § 252.07(9)(a)3. The court of appeals construed this language to apply only to the fact of confinement and not to the place of confinement. *Washington,* 292 Wis. 2d 258, ¶ 12. The City asks us to adopt the court of appeals' interpretation. We adopt Washington's interpretation because we conclude it is more reasonable. We interpret Wis. Stat. § 252.07(9)(a)3. to require that "no less restrictive alternative" applies to the place of confinement as well as the fact of confinement.

¶ 43. Wisconsin Stat. § 252.07(9)(a)3. provides that DHFS or the local health official petitioning for confinement of a person with tuberculosis who is noncompliant with a treatment regimen must demonstrate "[t]hat all other reasonable means of achieving voluntary compliance with treatment have been exhausted and no less restrictive alternative exists; or that no other medication to treat the resistant disease is available."

¶ 44. The City argues that the language "no less restrictive alternative exists" applies to the fact of confinement only because the other items listed under Wis. Stat. § 252.07(9)(a) apply only to the fact and not place of confinement. It asserts that the place of confinement need only be, as § 252.07(9)(a) provides, "a facility where proper care and treatment will be provided and spread of the disease will be prevented." The City also argues that the fact that other statutes more explicitly require "least restrictive" placement, citing Wis. Stat. §§ 51.20(9)(b), 51.30(4)(b)5., 51.35(1)(d)1., 55.06(9)(a),[19] 938.33(a), 938.355(1), and 938.357(4)(c)1., demonstrates that the

___

[19] Wisconsin Stat. § 55.06(9)(a) was amended and renumbered by 2005 Wis. Act 264 and the relevant language is now contained in Wis. Stat. § 55.12(3).

legislature did not intend for "no less restrictive alternative" language to apply to the place as well as the fact of confinement.

¶ 45. Washington argues that the full context in which Wis. Stat. § 252.07(9)(a)3. appears, as well as certain provisions of the administrative code, indicate that "no less restrictive alternative" language applies to place of confinement as well as fact of confinement. She notes that the tuberculosis control statute also includes a provision for short-term confinement, Wis. Stat. § 252.07(8)(c). She further notes that many (if not most) persons subject to a petition for long-term confinement under Wis. Stat. § 252.07(9) have already been confined to a specified place under the short-term confinement statute, which provides that if a person is to be held for more than 72 hours, there must be "a court hearing under sub. (9) to determine whether the confinement should continue." Wis. Stat. § 252.07(8)(c). She argues that because the judicial proceeding under the long-term confinement statute seeks to continue "the confinement"—not confinement in the abstract, but a confinement to a specified place—failure to apply the "no less restrictive" standard to the place of confinement would mean that the initial place of confinement ordered by DHFS or the local health official without prior judicial approval under the short-term confinement provision would be essentially unreviewable, no matter its restrictiveness.

¶ 46. Both parties present reasonable interpretations of the statute, but we conclude that Washington's view is more reasonable. Confinement of a person who is noncompliant with a prescribed treatment regimen is not confinement in the abstract, but confinement to a specified place. A person already confined under the short-term tuberculosis confinement statute, Wis. Stat.

§ 252.07(8), is confined to a specified place selected by DHFS or a local health officer. For the person subject to a petition for long-term confinement who is already confined under § 252.07(8), the court determines whether the existing confinement should be continued. *See* § 252.07(8)(c) ("a court hearing under sub. (9) to determine whether the confinement should continue.").

¶ 47. Portions of Chapter HFS 145 of the administrative code provide additional support for this interpretation. "Confinement" as defined in the tuberculosis control subchapter of HFS 145, means "restriction of a person with tuberculosis *to a specified place*" to achieve the goals of treatment and prevention of disease transmission. Wis. Admin. Code § HFS 145.08(2) (emphasis added). This language further demonstrates that the tuberculosis control statute contemplates confinement to a particular facility. Likewise, a related subchapter of HFS 145 concerning control of communicable diseases states that the remedy for noncompliance with prescribed treatments should be that which "is the least restrictive on the respondent which would serve to correct the situation and protect the public's health." Wis. Admin. Code § HFS 145.06(5). A remedy that includes confinement would be to a particular place with prevention and treatment as goals, and, taken with Wis. Admin. Code § HFS 145.08(2), these provisions indicate that officials must consider whether no less restrictive alternative exists to the place of confinement.

¶ 48. In light of the legislature's choice to permit confinement to jail of a person with noninfectious tuberculosis who is noncompliant with a prescribed treatment regimen, we conclude that the legislature intended the "no less restrictive alternative" language to apply to the place of confinement as well as the fact

of confinement. The legislature did not intend jail to be a placement of first resort for persons with tuberculosis who are noncompliant with a prescribed treatment regimen.

## C

¶ 49.  Next, Washington argues that the circuit court erred in considering the relative costs to taxpayers of different placements in making its confinement decision. She asserts that cost may not be considered in determining place of confinement because it is not one of the placement criteria set forth in Wis. Stat. § 252.07(9). Washington cites *D.E.R. v. La Crosse County,* 155 Wis. 2d 240, 248, 455 N.W.2d 239 (1990), superseded by statute as stated in *Dunn County v. Judy K.,* 2002 WI 87, ¶ 16, 254 Wis. 2d 383, 647 N.W.2d 799, for the proposition that costs are an impermissible factor in determining placement in an involuntary confinement.

¶ 50.  In *D.E.R.,* this court reversed a circuit court's order of protective placement under Wis. Stat. § 55.06(9)(a) (1987–88)[20] where the circuit court denied placement to the "least restrictive environment" as required by statute because it would have imposed greater financial burden on the county. *D.E.R.,* 155 Wis. 2d at 242. No county matching funds were available for the placement. *Id.* at 245. Washington asserts that *D.E.R.* requires that a statute expressly provide that cost may be a factor in placement for the circuit court to consider cost, citing the following:  "The legislature has not expressly limited the county's respon-

---

[20] The protective placement statute was later amended to permit consideration of fiscal matters in placement. *See Dunn County v. Judy K.,* 2002 WI 87, ¶ 16, 254 Wis. 2d 383, 647 N.W.2d 799; Wis. Stat. § 55.06(9)(a) (1997–98).

sibility in ch. 55 to make placements to the least restrictive environment to funds available from state or federal sources and county matching funds." *Id.* at 252.

¶ 51. The City responds that a court may take cost into consideration when determining place of confinement because Wis. Stat. § 252.07(9) does not preclude a court from doing so. Moreover, the City notes that the *D.E.R.* court explicitly declined to address the question that Washington raises here:

> This case does not pose the question of whether the circuit court may ever consider the costs of the proposed placement. Counsel for D.E.R. and M.D.A. acknowledged at oral argument that there may be cases in which the costs of the proposed placement are so exorbitant and the benefits to the individual so minimal that it is not reasonable for a professional to recommend the placement or for a circuit court to order such a placement.

*D.E.R.*, 155 Wis. 2d at 253.

¶ 52. We turn to Wis. Stat. § 252.07(9)(a) and interpret its language in a manner that is consistent with the purposes of the statute. *Kalal*, 271 Wis. 2d 633, ¶ 49 (statutes should be interpreted in a manner that is consistent with their manifest purpose). The statute does not explicitly address whether costs may be a factor in determining place of confinement. However, the factors a court must consider in determining the place of confinement under the statute include: The place of confinement must be a facility (a) where proper care and treatment will be provided, (b) where spread of the disease will be prevented, and (c) that is not more restrictive than an alternate place of confinement. *See* Wis. Stat. § 252.07(9)(a).

130

¶ 53. We conclude that a circuit court may take into account cost when determining place of confinement under Wis. Stat. § 252.07(9). A court must first determine that the place of confinement is a facility where proper care and treatment will be provided, spread of the disease will be prevented, and that no less restrictive alternative to the proposed placement exists. Once the court has engaged in this analysis, and two or more placement options remain, a court may consider cost as a factor in making its determination. A party requesting that a court take into account the cost of various placements must offer some proof to support its assertions for the court to consider cost as a factor in placement.

## IV

¶ 54. We turn now to the question of whether the circuit court's order confining Washington to jail under Wis. Stat. § 252.07(9) was a proper exercise of its discretion. "We affirm discretionary decisions if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result." *Robin K.*, 291 Wis. 2d 333, ¶ 12 (citations omitted).

¶ 55. Washington contends that the circuit court confined her to jail instead of the Medical Center based solely on its conclusion that the costs to local taxpayers of confinement to the Medical Center were too burdensome. We agree that the court's stated reasons for its placement decision were fiscal in part. However, we conclude the transcript of the circuit court hearing demonstrates that other factors, including the public health of the community and the treatment and care of Washington, were paramount.

131

¶ 56.   The circuit court found that Washington posed a "huge health risk" to the community by repeatedly failing to take her medication for tuberculosis. The record shows that Washington had been previously treated for tuberculosis and was therefore at greater risk of developing a more dangerous, drug-resistant strain of the disease. The court concluded that Washington had a history of disappearing from sight, that the Department previously had great difficulty locating her, and that there was nothing in the record to show that she would voluntarily turn herself in to start taking her medicine again. When placed in the community under supervised conditions, Washington walked away from that placement. The court was concerned that Washington "cannot comply with Court orders." It heard testimony that if Washington were to escape custody yet again she would "certainly" become contagious within a month, perhaps in as soon as a week. The court was also concerned that tuberculosis could "become resilient [sic] to medications."

¶ 57.   The circuit court did not want to confine Washington to jail, but felt it had no choice. The court kept open the door to alternative placements:

> [I]f you can find some other locked facility for your client that would agree to take her, the Court would be happy to order her placed somewhere else, and I'm sure the City would agree. The problem is that I need to have a locked facility where she is going to stay put . . . . At this point the only place that I know where I can put her in a confined setting would be at the CJF, in jail . . . . I refuse to require tax payers to pay 24 hour around the clock guard at her door to make sure she stays put. I don't think that's appropriate. Miss Washington was given an opportunity to receive treatment in the community and she failed to do that. But, [counsel], if you find some other place that she can be

132

placed, . . . I'll be happy to place her some place other than jail if you can come up with some alternative that would accept her, sir. I have no problem in doing that. Actually, I'd welcome that. But I don't know of any other facility at this time . . . . If you find some other place to have her placed, you want me to order something, sir, I'll be happy to look at whatever you have found.

¶ 58. We also note that Washington was highly belligerent toward police officers when she was picked up on September 27, that she "was kicking her feet out of the squad car window and kicking the inside roof of the squad car, all the while loudly screaming, yelling and crying."

¶ 59. Additionally, we observe that the circuit court record indicates that in Washington's case, the CJF was a place where proper care and treatment would be provided and spread of the disease would be prevented. The circuit court stated that "the [CJF] certainly qualifies" as "a facility where treatment can be rendered." Moreover, we note that the court received expert testimony that Washington's tuberculosis was presently noninfectious.

¶ 60. Based on these considerations, we conclude that the order confining Washington to jail was not an erroneous exercise of the circuit court's discretion. Washington was at risk to develop a drug-resistant strain of the disease, had a history of disappearing from sight and was belligerent toward officers. The circuit court reasonably concluded from these factors that medical staff would not have been equipped to handle Washington's outbursts, and that the added security of jail was necessary to ensure that she would continue taking her medication and would not escape confine-

133

ment. Factoring in taxpayer costs as well was not an erroneous exercise of discretion.

¶ 61. In future cases, courts should follow the guidelines set forth in this opinion when determining place of confinement under Wis. Stat. § 252.07(9). A court proceeding under § 252.07(9) must ascertain whether a proposed place of confinement is a facility where proper care and treatment will be provided, spread of the disease will be prevented and that no less restrictive alternative placement exists. After applying these criteria to potential placement options, if two or more placement options meet the statutory requirements for treatment and disease prevention, and none of these placement options is significantly less restrictive than the others, the court may take into account the relative costs of the different placements. However, a determination based on cost must be supported by more than mere assumptions about the cost of particular placements.

V

¶ 62. Finally, we consider the court of appeals' conclusion that the confinement order was also authorized under the contempt statutes, specifically, Wis. Stat. § 785.04(1), which grants circuit courts the power to enter remedial sanctions. Section 785.04(1) lists remedial sanctions a court may impose, including, under paragraph (b), "[i]mprisonment if the contempt of court" involves disobedience of a court order pursuant to Wis. Stat. § 785.01(1)(b). Paragraph (b) further provides: "The imprisonment may extend only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period." § 785.04(1)(b).

¶ 63. Washington contends it was unnecessary for the court of appeals to address whether the confine-

ment was also authorized under Wis. Stat. § 785.04(1)(b), and, regardless, the City should be judicially estopped from proceeding with this argument because the City expressly abandoned contempt as a basis for confining her to jail. Washington further argues it was not within her power to "purge" the condition of her confinement (her disease, she asserts) and, therefore, remedial contempt may not be a basis for the order.

¶ 64. We agree with Washington that the court of appeals' conclusion that the confinement was lawful under the remedial contempt statute was unnecessary. To begin with, the circuit court never made a finding of contempt for this court to review. It is simply not part of this case. Further, as Judge Kessler noted in dissent, such a conclusion violated the principle that "cases should be decided on the 'narrowest possible ground.'" *Washington,* 292 Wis. 2d 258, ¶ 25 (Kessler, J., concurring in part, dissenting in part) (quoting *State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989)).

¶ 65. Moreover, we agree with Washington that remedial contempt was not an appropriate sanction in this case. A contemnor may be imprisoned "only so long as the person is committing the contempt of court." Wis. Stat. § 785.04(1)(b). Once a contemnor complies with the prior court order, or "purges" the contempt, the person must be released. "The purge provision must clearly spell out what the contemnor must do to be purged, and that action must be within the power of the person." *State ex rel. N.A. v. G.S.,* 156 Wis. 2d 338, 342, 456 N.W.2d 867 (Ct. App. 1990) (citing *Schroeder v. Schroeder,* 100 Wis. 2d 625, 638, 302 N.W.2d 475, 482 (1981)). "Thus, it is often said that contemnors 'hold the keys to their own jails.'" *Id.* (quoting *State v. King,* 82 Wis. 2d 124, 137, 262 N.W.2d 80 (1978)).

¶ 66. Of course, no express purge provision was provided in this case because the circuit court declined to proceed under the remedial contempt statute. Thus, there was no reason for the court of appeals to reach this issue.[21]

¶ 67. Additionally, the legislature specifically addressed confinement for noncompliant and drug-resistant persons with tuberculosis in Wis. Stat. § 252.07. As Judge Kessler noted in her dissent:

> The legislature . . . developed an elaborate and detailed system to protect the public from, provide treatment for, and protect the civil liberties of, individuals with contagious tuberculosis. The legislature has concluded that the statutory system of regulation, and enforcement, provides adequate tools to protect the public and to treat the infected.

*Washington,* 292 Wis. 2d 258, ¶ 31 (Kessler, J., concurring in part, dissenting in part).

---

[21] The court of appeals stated that Washington " 'purges' her contempt by complying with the treatment regimen for the medically required time. After that purge, she will no longer be confined." *Washington,* 292 Wis. 2d 258, ¶ 19. Washington asserts that to purge the contempt under that analysis, she would need to be healed of tuberculosis, and because it is not within her power to heal herself, an order of remedial contempt would not lie.

However, Washington was not confined merely because she had tuberculosis. She was confined because she was diagnosed with tuberculosis and refused to comply with treatment orders. Thus, had Washington been imprisoned on a remedial contempt order, she could have purged her contempt by complying with treatment orders, i.e., by taking her medication. Once Washington took her medication, she would no longer be in contempt, and could no longer be held in jail under Wis. Stat. § 785.04(1)(b).

¶ 68. We therefore disavow the court of appeals' discussion of remedial contempt under Wis. Stat. § 785.04(1) as a separate basis for confinement to jail in this case. *Washington,* 292 Wis. 2d 258, ¶¶ 16–19.

## VI

¶ 69. In sum, we conclude that Wis. Stat. § 252.07(9)(a) authorizes confinement to jail for a person with noninfectious tuberculosis who fails to comply with a prescribed treatment regimen, provided that the jail is a place where proper care and treatment will be provided and the spread of disease will be prevented, and that no less restrictive alternative exists to jail confinement. We further conclude that a circuit court may take into account the cost of placement options when determining the place of confinement under § 252.07(9), but only after determining that two or more placement options fulfill the statutory requirements of proper medical treatment and disease prevention, and that none of these options is significantly less restrictive than the other(s).

¶ 70. We conclude the circuit court did not erroneously exercise its discretion in ordering Washington's confinement to the CJF, and therefore affirm on these grounds the court of appeals' opinion affirming the circuit court's order of confinement.

¶ 71. Finally, we conclude that Washington's confinement was not authorized by the remedial contempt statute, Wis. Stat. § 785.04(1), and specifically disavow the court of appeals' discussion of contempt as a separate basis for confinement to jail in this case.

*By the Court.*—The decision of the court of appeals is affirmed.