TOWN OF MADISON, Plaintiff-Respondent,

v.

COUNTY OF DANE, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2006AP2554. Oral argument January 17, 2008.
—Decided July 9, 2008.*

2008 WI 83

(Also reported in 752 N.W.2d 260.)

For the defendant-appellant-petitioner there were briefs by *Marcia MacKenzie,* corporation counsel, and *Gary Rehfeldt,* assistant corporation counsel, Madison, and oral argument by *Gary Rehfeldt.*

For the plaintiff-respondent there was a brief by *John M. Gerlach* and *Larowe, Gerlach & Roy, LLP,* Madison, and oral argument by *John M. Gerlach.*

An amicus curiae brief was filed by *Andrew T. Phillips, Kristen D. DeCato,* and *Stadler, Centofanti & Phillips, S.C.,* Mequon, on behalf of the Wisconsin Counties Association.

¶ 1. LOUIS B. BUTLER, JR., J. This is a review of a published court of appeals opinion[1] affirming a judgment of the Dane County circuit court, Judge David T. Flanagan, III, presiding. The County of Dane (County) challenges a judgment ordering the County to pay the Town of Madison (Town) $75,000 toward the cost of constructing a bridge, along with costs and fees.

¶ 2. The dispute in this case began when the County rejected the Town's Wis. Stat. § 81.38 (2001–02)[2] "bridge aid" petition as not meeting the statutory criteria for reimbursement. The Town filed a complaint with the Dane County Circuit Court, and the County's answer included the affirmative defense that the bridge was not "on a highway maintainable by the town" as required by § 81.38.

¶ 3. In a summary judgment decision and order, the circuit court entered judgment for the Town, con-

---

[1] *Town of Madison v. County of Dane,* 2007 WI App 177, 304 Wis. 2d 402, 737 N.W.2d 16.

[2] Effective January 1, 2005, Wis. Stat. § 81.38(1), entitled "Town bridges or culverts: construction and repair; county aid," was revised and renumbered as Wis. Stat. § 82.08(1). As we will explain, the revisions made by the session law amending the statute, 2003 Wis. Act 214, did not substantially alter the statute in ways affecting our decision. However, as the lower courts and parties in this case have, we apply the earlier version of the statute, Wis. Stat. § 81.38 (2001–02), corresponding with the date when the Town first approved the bridge at issue and included it in its 2003 budget. All subsequent references to § 82.08 are to the 2005–06 version, and all subsequent references to § 81.38 are to the 2001–02 version unless otherwise indicated.

cluding that the County was responsible for paying one-half the cost of the bridge and ordering the County to pay $75,000 plus costs and fees. The court of appeals affirmed the circuit court decision.

¶ 4. We conclude that the bridge at issue in this case was not a "bridge on a highway maintainable by the town" within the meaning of Wis. Stat. § 81.38 because the bridge aid petition did not request funding to help connect the bridge to a highway maintainable by the Town or for the frontage road extension project in its entirety, because there was no existing highway extending to the planned bridge site at the time of the Town's petition, and because the bridge was still not connected to a highway upon completion. Section 81.38 requires funding for only those bridges built on highways in existence at the time of a bridge's construction. As such, the County appropriately denied the Town's § 81.38 "bridge aid" petition. We therefore reverse.

I

¶ 5. The relevant facts of this case are not in dispute. The most pertinent facts relate to the Town's June 10, 2004, Dane County Bridge Aid Program petition for financial assistance in building a bridge ("the bridge").[3] In its petition and accompanying letter, the Town requested $75,000[4] for a new railroad overpass

---

[3] The petition also included requests for financial assistance for two culvert projects. Unlike the funds requested for the bridge, the culvert funds requested were approved and included in Dane County's 2005 budget. The culvert funding is therefore not at issue on appeal.

[4] The estimated cost of construction was $300,000. The Town received a grant for $150,000 and sought reimbursement for one-half of the remaining $150,000 cost. The other half was

bridge that, the letter explained, "will be constructed as part of the South Madison EDA Project, which includes the construction of an extension of the W. Beltline Highway frontage road along with many other components."

¶ 6. The formal petition requesting bridge aid did not describe the bridge itself as being on or connected to a highway, but described the bridge as located 1500 feet west of the nearest intersecting road. Architectural plans submitted along with the petition detail the design of the bridge but do not describe the bridge as being connected to any existing or future highways. However, the plans do describe the location of the bridge as "East Badger Road over Union Pacific Railroad."

¶ 7. Photographs and maps included in the record further clarify that the roadways the Town's project sought to connect, consisting of a segmented portion of East Badger Road[5] on the east and Ski Lane on the

obtained through a grant from the U.S. Department of Commerce's Economic Development Administration (EDA), an agency of the United States Department of Commerce authorized to effectuate the provisions of the Public Works and Economic Development Act, 42 U.S.C. §§ 3121–3226 (2004), and the Act's purpose of enabling localities and citizens to participate more fully in American prosperity by increasing economic growth through improved and expanded public infrastructure. *See Afton Alps, Inc. v. United States*, 392 F. Supp. 543, 545–46 (D. Minn. 1974); 42 U.S.C. § 3121(a)(3)(A)-(4). The EDA provides eligible recipients, including "local governments engaged in economic or infrastructure development activities," with a grant of 50 percent of the cost as the Federal share of any project carried out under this program. *See* 42 U.S.C. §§ 3122(4)(A)(iv); 3144(a)(1). Thus, the EDA also requires that eligible recipients provide half of the cost to match the funds granted by the federal government.

[5] East Badger Road is alternately referred to as the West Beltline or South Beltline frontage road by the parties; it is the

west, would not in fact be connected through the bridge's construction. Rather, to the east of the tracks that the bridge would traverse was a 200–foot gap between the railroad tracks and an East Badger Road cul-de-sac, and to the west there was a much wider gap of land, including a quarter mile of unpaved right-of-way and embankment between the bridge and Ski Lane. The bridge, as proposed, was 100 feet long, thus traversing less than half the distance between the railroad tracks and the nearest road to the east and leaving even more of an area between the tracks and the road on the west. Thus, the plan was to a build a bridge before any highway was built to which the bridge would be directly connected.

¶ 8. In a letter dated September 9, 2004, the County denied the Town's request to include funding for the bridge in the County's budget, stating that the bridge did not qualify for the bridge aid program. The Town subsequently served the County with a notice of claim and claim, and an amended notice and accompanying claim, pursuant to Wis. Stat. § 893.80(1)(a)-(b). The amended notice formally recited the Town's June 10, 2004, "request for Dane County to pay one-half of the Town's cost of constructing the railroad overpass bridge which is part of the Town of Madison EDA project" and described the bridge as "located on the frontage road west of 323 West Beltline Highway."

¶ 9. Despite the County's bridge aid denial, the Town began construction of the bridge in January 2005, and construction was completed in March 2005. After the bridge was built, construction began that connected the roadway to the bridge on both sides. The extension

_____

frontage road running nearly parallel and to the south of Madison's Beltline Highway between the Rimrock Road and Park Street exits.

of the roadway connecting it with the bridge was completed in August 2005, and the new road was dedicated in October 2005.

¶ 10. On May 6, 2005—after the bridge was built but before it was connected to the frontage road—the Town filed suit against the County seeking damages of $75,000, plus attorney's fees and costs. Although its answer admitted the facts alleged by the Town,[6] the County also included in its answer a request that the circuit court dismiss the action on the basis of two affirmative defenses.

¶ 11. The first affirmative defense raised by the County, which is the central issue upon review, was its assertion that "[i]nsofar as the section of highway has not been constructed, it is not yet maintainable, and since the plaintiff's new construction of the bridge is not 'on a highway maintainable by the town' as required by Wis. Stat. § 81.38 (2003), the bridge does not qualify for aid." The County's second affirmative defense was an assertion that the Town failed to state a cause of action upon which relief may be granted. The circuit court does not appear to have addressed the County's dismissal request.

¶ 12. On April 27, 2006, the Town filed a motion for summary judgment. The circuit court granted the Town's summary judgment motion. The court concluded that it is illogical and inconsistent with Wis. Stat. § 81.38's purpose of having counties absorb half the cost of bridge construction and repair to interpret

---

[6] Notably, the County admitted the Town's allegation that the overpass bridge at issue "is located on the frontage road west of 323 West Beltline Hwy., Town of Madison, Wisconsin," although such admission should be viewed in light of its affirmative defenses described above and the other arguments we will proceed to address.

"on a highway" to apply only to *existing* highways because "new bridges are often constructed where no highway existed previously." The court ruled that "recovery under Wis. Stats. § 81.38 is not precluded by the fact that a maintainable highway is not yet in existence," and ordered the County to pay $75,000 plus costs and fees.

¶ 13. On appeal by the County, the court of appeals described the proposed bridge as "connect[ing] previously unconnected portions of existing highways,"[7] and affirmed the judgment, concluding that Wis. Stat. § 81.38 "includes aid for bridge construction where there is no preexisting highway if the completed bridge is 'on a highway maintainable by the town.' " *Town of Madison v. County of Dane,* 2007 WI App 177, ¶¶ 1, 17, 22, 304 Wis. 2d 402, 737 N.W.2d 16.

¶ 14. The County sought review by this court, and on September 13, 2007, review was granted.

II

¶ 15. The standard for reviewing summary judgment decisions is set forth by Wis. Stat. § 802.08(2) (2005–06), which provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[7] As the preceding description of uncontested facts sets forth, this is an inaccurate description of the bridge, which did not connect the roads; the roads remained unconnected after the bridge was completed, as they were separated from the bridge by right of way or other non-highway land. The roads were not connected until the road construction extending the roads was completed several months after the bridge's construction.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review summary judgment decisions de novo, applying the same standards as a circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

¶ 16. In this case, neither party argues that there is a genuine issue of material fact. As such, we solely decide whether the Town is entitled to judgment as a matter of law. The question of law in this case is one of statutory interpretation. The outcome of the case depends on the meaning of Wis. Stat. § 81.38's language requiring a county to levy a tax to fund a bridge's construction or repair if it is "on a highway maintainable by the town."

¶ 17. When we interpret a statute, we begin with the text of the statute, and "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). Statutory language is generally given its common, ordinary and accepted meaning. *Id.* "We often consult a recognized dictionary to determine the common, accepted meaning of a word. However, when construing a word or phrase that is a legal term of art, we give the word or phrase its accepted legal meaning." *City of Milwaukee v. Washington,* 2007 WI 104, ¶ 32, 304 Wis. 2d 98, 735 N.W.2d 111 (citations omitted). Further, we examine statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal,* 271 Wis. 2d 633, ¶ 46. If a statutory provision is ambiguous, i.e., "if reasonable minds could differ as to

its meaning," *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 283, 548 N.W.2d 57 (1996) (citation omitted), we examine extrinsic sources, such as legislative history, to ascertain the legislative intent. *Kalal,* 271 Wis. 2d 633, ¶ 43.

¶ 18. In addition to these well-established statutory construction principles, we observe that nearly a century ago, in interpreting a predecessor version of the bridge aid statute, this court held that the statute is subject to strict construction. *State ex rel. Hamburg v. Bd. of Supervisors,* 145 Wis. 191, 192–93, 130 N.W. 104 (1911). Specifically, this court held that the extent of a county's power to levy taxes for the construction of a town's bridge "must be regarded as measured by the precise terms of the law. No equitable considerations will warrant the court coercing the county to go further than the written specifications prescribed by the legislature." *Id.* at 193.

## III

¶ 19. The bridges of Dane County, like bridges in all Wisconsin counties, may receive county funding under Wis. Stat. § 81.38 for construction or repairs when the criteria of that statute are met. Section 81.38 provides in relevant part:

> (1) When any town has voted to construct or repair any . . . bridge on a highway maintainable by the town, and has provided for such portion of the cost of such construction or repair as is required by this section, the town board shall file a petition with the county board setting forth said facts and the location of the . . . bridge; and the county board, except as herein provided, shall thereupon appropriate such sum as will, with the money provided by the town, be sufficient to defray the expense of constructing . . . [the] bridge . . . .

(2) . . . The town and county shall each pay one-half of the cost of construction or repair above $1,500. . . .

Wis. Stat. § 81.38(1)-(2). Under § 81.38, after a town votes to construct a bridge and has raised half the cost of the bridge, it can petition the county for "bridge aid" for the remainder of the bridge's cost. *Id.; see also Town of Grand Chute v. Outagamie County,* 2004 WI App 35, ¶ 2, 269 Wis. 2d 657, 676 N.W.2d 540.

¶ 20. The dispute in this case pertains to the phrase "on a highway maintainable by the town" contained within Wis. Stat. § 81.38(1), describing bridges funded under the statute. The County frames its dispute with the Town and with the lower court decisions by focusing on the word "highway," a word that is defined elsewhere in the Wisconsin Statutes, but not within ch. 81. *See* Wis. Stat. §§ 340.01(22) and 990.01(12) (2005–06) (defining "highway" as "all public ways and thoroughfares and . . . bridges upon the same"). *See also Morris v. Juneau County,* 219 Wis. 2d 543, 559–62, 579 N.W.2d 690 (1998)(applying § 340.01(22) in a case involving a different section of ch. 81). The County observes that § 340.01(22) contains an explanation that the definition of "highway" "includes the entire width between the boundary lines of every way open to the use of public as a matter of right for the purposes of vehicular travel." The County concludes that under this description, a non-existing highway does not meet the legal definition of "highway" because if it does not exist, it cannot be open to the use of the public for purposes of vehicular travel.[8]

---

[8] Dissenting from the court of appeals decision in this case, Judge Dykman similarly stated, "the plain meaning of that statute is that a chasm is not a highway, and certainly not a

¶ 21. The Town does not dispute that Wis. Stat. §§ 340.01(22) and 990.01(12) contain applicable definitions of "highway."[9] The Town agrees that in *Morris,* this court held that the § 340.01(22) definition was applicable to a ch. 81 case. However, the Town contends, the agreed upon statutory definition does not resolve the issue of whether a highway must be pre-existing, and Wis. Stat. § 81.38 does not require that the "highway maintainable by the town" exist prior to the bridge's construction.

¶ 22. As such, what the parties disagree about is not the literal meaning of "on a highway maintainable by the town" but whether there are any temporal restrictions modifying that phrase. The parties disagree about *when* a bridge must be "on a highway maintainable by the town" in order to qualify for bridge aid, and the related question of when that maintainable highway must exist in relation to the bridge.

¶ 23. Specifically, the County argues that in order to qualify for bridge aid, the bridge must be on an *existing* highway maintainable by the town. Because

highway maintainable by the Town." *Town of Madison,* 304 Wis. 2d 402, ¶ 23 (Dykman, J., dissenting).

[9] Nor do the parties dispute the meaning of "on," although an interesting discrepancy about the meaning of "on" arose in the oral arguments of two attorneys arguing against the town: Assistant Corporate Counsel Gary Rehfeldt, arguing on behalf of Dane County, and Attorney Andrew Phillips, arguing on behalf of amicus curiae Wisconsin Counties Association (WCA). In an argument from which the County quickly distanced itself, Attorney Phillips argued that "any time you're bridging an expanse that is not part of a town road," the bridge would not qualify for bridge aid. We reject this interpretation as absurd. *See State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. The general concept of bridges is that they bridge such expanses.

the bridge in question was not on a highway maintainable by the Town when it was constructed, and a highway adjoining the future bridge's site did not yet exist at the time of the Town's bridge aid petition, there was a "temporal disconnect" that precluded bridge aid in this case.

¶ 24. The Town responds that the County's interpretation of Wis. Stat. § 81.38 as precluding bridge aid where there is no pre-existing highway is in direct conflict with the statute's plain language, which requires funding as long as the bridge, "upon completion, is on a highway maintainable by the Town." At oral argument, the Town offered a new variation of the "upon completion" argument. While not burning its bridges by waiving its briefed "upon completion" argument, the Town at oral argument appeared to argue in the alternative that § 81.38 requires funding as long as the overall project contemplates an eventual connection of the bridge to a highway at some point down the road after the bridge's construction.[10]

¶ 25. While disagreeing about the meaning of Wis. Stat. § 81.38, the parties do not dispute that the frontage road to which the bridge was eventually connected was a highway maintained by the Town. However, it is also undisputed that, upon completion, the bridge was not on that highway. Rather, the bridge was completed in March 2005, but the extension of the frontage road

---

[10] In other words, the Town described the bridge as essentially serving as a bridge to the future, part of a broader economic development plan that would continue beyond the construction of the bridge. The County, in contrast, has dubbed the bridge as a "bridge to nowhere," because when it was finished being built, it was connected to unpaved land, not to the type of highway required for county funding under Wis. Stat. § 81.38.

connecting to the bridge did not occur until August 2005. Thus, under even the Town's "upon completion" interpretation of § 81.38, the bridge did not qualify for funding under the statute, because it was not "upon completion" on a highway maintainable by the Town.[11]

¶ 26. However, to address the Town's apparent alternative argument that as long as a bridge will eventually be connected to a highway, it should be funded, we will proceed to address the meaning of Wis. Stat. § 81.38's "on a highway maintainable by the town" language. For the reasons given below, we conclude that § 81.38 requires funding for only those bridges built on highways in existence at the time of a bridge's construction.

¶ 27. Turning first to the text of Wis. Stat. § 81.38, we observe that while the statutory language allows for the construction or repair of a "bridge on a highway maintainable by the town," making it clear that the bridge does not have to be preexisting for the town to request funding, it is unclear whether the "highway maintainable" must be preexisting where the bridge is to be constructed, or whether the bridge could be built before the "highway maintainable" exists under the statute.

---

[11] The dissent portrays our opinion as "reach[ing] this conclusion because West Beltline Highway frontage road and Ski Lane were not a contiguous highway when the bridge was constructed." Dissenting op., ¶ 55. Our construction is not merely based on whether the two separate and distinct roads were contiguous, but rather, on the fact that these two separate and distinct roads were connected neither to the bridge nor to each other. Thus, the newly constructed bridge was not built "on a highway." Indeed, upon completion, the newly constructed bridge did not "bridge" the two noncontiguous highways.

417

¶ 28. Either interpretation is reasonable, and we therefore treat Wis. Stat. § 81.38 as ambiguous. *UFE Inc.*, 201 Wis. 2d at 283. In this case, such ambiguity can be resolved by reference to the statutory history underlying the statute, read in conjunction with both § 81.38 and surrounding statutory language. *See Kalal*, 271 Wis. 2d 633, ¶¶ 46–48.

¶ 29. Chapter 81 of the 2001–02 Wisconsin Statutes, of which Wis. Stat. § 81.38 is a part, is entitled "Town Highways." The majority of the surrounding statutory provisions in the chapter focus on highways. Consequently, the context of § 81.38 would suggest that the bridge aid statute is better understood as a subset of a chapter addressing the construction, maintenance, and repair of town highways.

¶ 30. Going back to the earlier incarnations of the bridge aid statute, we observe that in the nineteenth century, the 1858 version of the statute described funding being appropriate for "necessary" bridges[12] and was modified in 1866 to clarify that such necessity is related to the bridge's location on a primary road. Specifically, the 1866 language provided that taxes may be levied "for erecting or repairing any necessary bridge or bridges *upon the principally traveled thoroughfares* in said town," with the caveat that even if the road was not the principally traveled thoroughfare[13] for a particular town, the county could still appropriate bridge

---

[12] Under the 1858 statute, county supervisors were statutorily authorized to levy taxes to defray the costs of building or repairing bridges "[w]henever it shall appear . . . any one of the towns in such county would be immeasurably burthened by erecting or repairing any necessary bridge or bridges in said town." Wis. Stat. ch. 19, § 115 (1858).

[13] As opposed to a "road less traveled."

aid if the bridge was necessary for the use and convenience of adjoining towns.[14] Wis. Stat. ch. 19, § 115 (1866)(emphasis added).

¶ 31. In 1879 the statute, renumbered as Wis. Stat. § 1319, was amended to make funding mandatory rather than discretionary. § 1, ch. 126, Laws of 1879. The amended statute also used the word "highway" for the first time, providing that whenever the cost to a town exceeded a certain property tax threshold

> for the purpose of erecting or repairing any bridge or bridges upon the principally traveled highway of such town; or when it shall be made to appear that a bridge in any town is necessary for the use and convenience of the adjoining towns, rather than the town in which it shall be situated, it shall cause such sum to be levied upon the taxable property of the county as will be sufficient to defray the expense of erecting or repairing the same. . . .

*Id.* Although the "highway" language was removed in 1885,[15] Wisconsin courts continued to recognize that counties could refuse funding for bridges on the grounds "that the bridge or bridges are not upon public highways, or are bridges which the town has no authority to build or repair." *State ex rel. Town of Star Prairie v. Bd. of Supervisors*, 83 Wis. 340, 347, 53 N.W. 698 (1892).

¶ 32. The first time the language "on a highway maintainable by the town" appeared in Wisconsin's bridge aid statutes was in 1923, when the statute was

---

[14] The 1866 statute, as well as later versions, also contained limitations on bridge aid based on the initial cost of a project in proportion to a town's taxable property; such statutory language and related amendments are not pertinent to our analysis.

[15] *See* § 1, ch. 187, Laws of 1885.

rewritten to describe bridge aid as applying to the construction or repair of "any bridge *on a highway maintainable by the town*" when the town has paid its statutorily required share. § 87.01, ch. 108, Laws of 1923 (emphasis added). Since 1923, when the "highway" language reappeared, more explicitly narrowing the scope of the statute, bridge aid funding has continued to be expressly limited to funding for a bridge "on a highway maintainable by the town." *See* Wis. Stat. §§ 81.38, 82.08. *See also Town of Grand Chute,* 269 Wis. 2d 657, ¶ 2, ¶ 13 n.5. Although a 2003 Act changed the phrase "highway maintainable" to "highway maintained," this amendment did not change the substantive meaning of the statute, as the court of appeals in this case correctly recognized:

> Section 81.38(1) referred to a "highway *maintainable* by the town"; section 82.08(1)(2005–06) refers to a "highway *maintained* by the town" (emphasis added). This revision was part of broader revisions to both § 81.38 and to the town highway statutes in general. *See generally* 2003 Wis. Act 214. . . . A prefatory note to the Act that amended and renumbered the town highway statutes states that, if an individual section's explanatory note "does not indicate a substantive change, none is intended." 2003 Wis. Act 214, Joint Legislative Council Prefatory Note 4. The note then goes on to state: "If a question arises about the effect of any modification made by this bill, the special committee intends that the revisions in this bill be construed to have the same effect as the prior statute." *Id.* The individual explanatory note accompanying the section that revised and renumbered § 81.38(1) attributes no significance to the change from "maintainable" to "maintained." *See* 2003 Wis. Act 214, § 141, note.

*Town of* Madison, 304 Wis. 2d 402, ¶ 17 n. 4. Thus, as the court of appeals has noted, the legislature's prefa-

tory note explaining the change from "maintainable" to "maintained," confirms the legislature's understanding that this is how the statute has been interpreted all along.

¶ 33. Other than *Town of Grand Chute,* there are no published cases addressing Wis. Stat. § 81.38. *Town of Grand Chute* has limited utility for our analysis because it primarily addresses the meaning of "costs" in the statute; it does not address the meaning of the statute's "on a highway" language.[16] Prior to *Town of Grand Chute,* no other Wisconsin decision contained a substantial analysis of either § 81.38's language or the

---

[16] Furthermore, *Town of Grand Chute's* description of the general cost-sharing purpose of Wis. Stat. § 81.38 is somewhat incomplete. The court described that purpose as "to have counties absorb half the cost of constructing or repairing bridges," and explained that § 81.38(2) "essentially obligates the county to pay for one-half the cost of constructing or repairing the town's bridge." *Town of Grand Chute v. Outagamie County,* 2004 WI App 35, ¶¶ 2, 18, 269 Wis. 2d 657, 676 N.W.2d 540. We clarify here that counties do not literally pay for the bridges, but rather they impose tax levies to fund the bridges. Wis. Stat. § 81.38(1). More importantly for our analysis, the plain text of the statute does not clearly require counties to impose tax levies to fund *every* bridge a town constructs, but rather, only those bridges built on highways maintainable by towns.

The dissent misses this point in its discussion of *Town of Grand Chute,* which it describes as setting forth a broader cost-sharing legislative purpose that our opinion today somehow contravenes. *See* dissenting op., ¶¶ 61–63. The dissent's understanding of the legislature's purpose is flawed, however, as the dissent fails to recognize that counties have no obligation to assist with bridge construction where § 81.38(2) does not apply, and that § 81.38(2) applies to require funding only for those bridges built on highways maintainable by towns, not to all bridge construction without qualification.

comparable language in predecessor statutes describing bridges eligible for county funding as being on highways maintainable by towns.[17]

¶ 34. Even though this is a case of first impression in a number of respects, we are not without guidance, however. It is clear from the emphasis on the necessary role of highways in Wis. Stat. § 81.38 and its predecessor statutes, and from the surrounding text of chapter 81 focusing on highway maintenance and funding, that the purpose of § 81.38 is not just cost sharing and cooperation between counties and towns in general, but rather, cost sharing in the specific context of bridges built upon maintainable highways. Much of the statutory history also indicates that the highways to which bridges must be connected in order to qualify for funding have historically been required to be highways that are essential to travel in the county, or are "well traveled" thoroughfares at the time of the bridge aid application.

¶ 35. This highway-focused purpose underlying Wis. Stat. § 81.38 helps provide a predictable and certain basis for county determinations whether or not to fund town bridges. Whereas, under the Town's approach, counties might be required to fund bridges even if their eventual connection to highways will not transpire for years, or may not ever occur, a strict interpretation limiting funding requirements to bridges built upon existing highways provides the clearer guidance

---

[17] However, as we have described, this court interpreted the 1892 version of the statute, which was devoid of highway or thoroughfare language, as nonetheless precluding a county's denial of funding for bridges on the basis that the bridges "are not upon public highways." *State ex rel. Town of Star Prairie v. Bd. of Supervisors*, 83 Wis. 340, 347, 53 N.W. 698 (1892).

required for ensuring predictability and certainty in future cases. Reading the language "on a highway maintainable by the town" literally is in accord with our reading of Wisconsin's bridge aid statutes. *See Hamburg*, 145 Wis. at 192–93. The Town offers no specific parameters as to how far in the future or how definite such future connections might take place, and points to no authority offering guidance on this point.[18]

¶ 36. In its brief to this court, the County asks the most pertinent question in this case: "if there is no preexisting highway[,] how can a completed bridge be on a 'highway maintainable by a town?' " Answering its own rhetorical question, the County continues, "[t]here is a temporal disconnect occurring here; a highway can't be 'maintainable' until it is constructed." We agree with the County's analysis. In order for a bridge to be constructed or repaired on a highway "maintainable by the town" within the meaning of Wis. Stat. § 81.38(1), we conclude that the bridge must be constructed or repaired on an existing highway.

¶ 37. Having concluded that the language of Wis. Stat. § 81.38(1) limits county bridge aid requirements

---

[18] The dissent attempts to bridge the gap for the Town by claiming that "[m]any similar phrases in other sections of the statutes" also employ prepositional phrases similar to "on a highway maintainable by the town" to identify bridges in terms of their relationships to highways that they are a part of "or will become" a part of. Dissent, ¶ 57. However, while naming eight other statutes that mention bridges, the dissent fails to cite a single statute that merges the present and future tenses in the manner the dissent urges, indicating that a bridge's identity may be determined by a future condition that does not yet exist, defining things in terms of what may be, not in terms of what is.

to bridges on existing highways maintainable by towns, we conclude that the bridge in this case did not meet that statutory criteria for funding. The parties do not dispute that in this case, when the Town's bridge aid petition was submitted, there was no highway maintainable by the Town already in existence that extended to the spot where the bridge would be built. In addition, the parties do not dispute that the bridge was not "on a highway maintainable by the town" when its construction was complete. Rather, even the Town concedes that the bridge was only 100 feet long, thus leaving a gap of over 100 feet between the railroad tracks and the nearest road to the east and leaving even more of an area between the tracks and the road on the west upon its completion.[19]

¶ 38. In a key concession at oral argument, the Town even acknowledged that it could have applied for funding to help fill that gap, thereby connecting the

---

[19] As previously noted, the court of appeals inaccurately described the proposed bridge as "connect[ing] previously unconnected portions of existing highways." *See supra,* ¶ 13 & n. 7. We note here that the circuit court's description of the Town's proposal as a proposal "to use an existing state right-of-way to connect the two dead ends," and its description of that connection as "requir[ing] the construction of a railroad overpass bridge that would span both the railroad line and the right-of-way," are clearly erroneous for the same reason. The record establishes, and the parties agree, that the bridge itself would not traverse the entirety of the right-of-way, but would only cross a length of 100 feet across the railroad tracks, leaving a large section of unpaved right-of-way intact to the west until a highway was later extended across that land. Further, at oral argument, when the attorney for the Town was asked whether the right-of-way area to the west of the railroad was a highway maintainable by the Town, he conceded it was not, because it was vacant land without pavement at the time of the bridge's construction.

bridge to the road, but it failed to do so, leaving the gap between the bridge and highway unaddressed by the bridge aid petition.[20] In other words, the Town failed to request funding in its petition that would bridge the gap between the bridge and the highway, and that would, with reference to the highway, ensure that funding was allocated to help "take it to the bridge."[21]

■■

¶ 39. The only description of the bridge's relationship to a road in the Town's petition was the description of the bridge as located 1,500 feet west of the nearest intersecting road. Although the letter accompanying the petition described the bridge construction as part of a broader plan to extend the frontage road, and the architectural plans submitted along with the petition described the bridge location in relation to the frontage road, there is no language in the petition explicitly describing the bridge as being built on or connecting to

---

[20] Wisconsin Stat. § 81.38(2) provides in relevant part that "[i]n determining the cost of construction or repair of any culvert or bridge, the cost of constructing or repairing any approach not exceeding 100 feet in length shall be included." At oral argument, the Town's attorney acknowledged this statutory provision, explaining that "the statute also talks about that, you can even apply for, which the Town did not, 100 feet of entrance portion to the bridge, on the road," but that in this case "theoretically, if what is covered, how close we are to this bridge, is 200 feet less 100 feet. . . ." Here, the Town seems to be arguing that its failure to request any funding to extend the road to the bridge was due to the fact that funding beyond the first 100 feet would not be granted. However, there is no question that the Town could have made a petition for funding to connect the road to the bridge, subject to the legislative limitation of cost-sharing at the 100–foot mark.

[21] *See* Charles Donelan, *James Brown: 1933–2006,* 21 Santa Barbara Indep. 52, Jan. 11, 2007, at 15.

that road. It may be the case that it was the Town's intent to connect the bridge to the highway eventually, but Wis. Stat. § 81.38 does not set forth funding for *future* connections of a funded bridge to a highway after the bridge is built.

¶ 40. Thus, with (1) the petition describing funding for the bridge alone, not for the entire frontage road extension project; (2) the petition not requesting funding to connect the bridge to a highway, although the Town concedes it could have requested such funding; and (3) the bridge in fact not being connected to a highway maintainable by the Town upon the bridge's completion, it is clear that the Town's bridge falls outside the scope of Wis. Stat. § 81.38's requirements.

¶ 41. The Town has conceded that its petition for bridge aid was for funding for the bridge alone, and did not include a request for funding to help connect the bridge to a highway maintainable by the Town. Furthermore, no such highway extended to the bridge site either prior to the bridge's construction or at the time of the bridge's completion. Thus, under the Town's own interpretation of Wis. Stat. § 81.38 as requiring funding for a bridge that is on a highway maintainable by the Town "upon completion," the bridge did not qualify for funding.

## IV

¶ 42. We conclude that the bridge at issue in this case was not a "bridge on a highway maintainable by the town" within the meaning of Wis. Stat. § 81.38 because the bridge aid petition did not request funding to help connect the bridge to a highway maintainable by the town or for the frontage road extension project in its entirety, because there was no existing highway

426

extending to the planned bridge site at the time of the Town's petition, and because the bridge was still not connected to a highway maintainable by the Town upon completion. Section 81.38 requires funding for only those bridges built on highways in existence at the time of a bridge's construction. As such, the County appropriately denied funding for the bridge under § 81.38. We therefore reverse.

¶ 43. *By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The majority opinion applies Wis. Stat. § 81.38 (2001–02) according to its literal text, a well-accepted approach to statutory interpretation. The Town of Madison did not literally "vote[] to construct . . . [a] bridge on a highway maintainable by the [T]own." The Town of Madison instead voted to construct a bridge near a highway maintainable by the Town and then to connect the bridge to the highway. The Town of Madison therefore loses; it did not comply with the text of the statute.

¶ 45. I suggest that the chief of the legislative reference bureau consider reporting this decision and Wis. Stat. § 82.08(1) (2005–06) to the law revision committee. *See* Wis. Stat. §§ 13.83(1); 13.92(2)(j).

¶ 46. I join in the court's mandate but write separately for the reasons set forth.

¶ 47. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). I agree with the lead opinion that this case turns on the interpretation of the statutory phrase, "bridge on a highway maintainable by the town," found

in Wis. Stat. § 81.38(1),[1] now Wis. Stat. § 82.08(1).[2] However, the lead opinion concludes that a highway must be constructed before the bridge is constructed in order for the bridge to come within the identified statutory phrase from § 81.38(1).[3]

¶ 48. In my view, the phrase, "bridge on a highway maintainable by the town," identifies a type of bridge by describing the relationship of the bridge to the highway of which it is, or will become, a part. The type of bridge that is "on a highway maintainable by the town" is distinguished from many other types of bridges referenced in the statutes that also are located on highways, but which highways are maintained by governmental entities other than a town, such as the state or another municipality. The phrase, "bridge on a highway maintainable by the town," has nothing to do with whether the bridge is constructed before or after the highway is constructed. Rather, if the bridge is of the type identified in Wis. Stat. § 81.38(1), the town may apply to the county of which the town is a part for assistance in constructing and maintaining such a bridge. If the county has not opted out of § 81.38(2), the county must pay its statutory share of the costs incurred.[4] Accordingly, I would affirm the decision of the court of appeals, and I dissent from the lead opinion.[5]

---

[1] Effective January 1, 2005, Wis. Stat. § 81.38(1) was revised and renumbered as Wis. Stat. § 82.08(1). I agree with the lead opinion's assertion that there was no change to § 81.38(1) that affects the questions presented in this review. *See* lead op., ¶ 2 n.2.

[2] *Id.*, ¶ 4.

[3] *Id.*

[4] Dane County has not opted out of Wis. Stat. § 81.38(2).

[5] The lead opinion, coupled with the concurrence's vote to reverse the court of appeals, decides the outcome in this dispute

## I. BACKGROUND

¶ 49. The facts relating to this controversy are not in dispute. The Town of Madison applied to Dane County for statutory assistance in constructing a bridge to span a railway corridor and connect two town highways, the West Beltline Highway frontage road and Ski Lane.[6] Prior to applying for aid from the County, the Town had obtained federal assistance for a portion of the cost of constructing the bridge. The County denied the Town's petition for funding.[7] Thereafter, the Town constructed the bridge; connected a town highway to either side of the bridge;[8] and sued the County to collect the financial assistance that the Town believed was due under Wis. Stat. § 81.38(2).[9]

¶ 50. The circuit court granted summary judgment to the Town, concluding that the County was required to pay a portion of the bridge's construction, pursuant to Wis. Stat. § 81.38(1) and (2). The County appealed, and the court of appeals affirmed.

between the Town of Madison and Dane County. The lead opinion has no precedential value because the concurrence does not join the lead opinion's statutory interpretation. Accordingly, there are three justices who agree with the lead opinion's interpretation of Wis. Stat. § 81.38(1), three justices who agree with the dissent's interpretation of § 81.38(1) and one justice who does not say how she thinks § 81.38 should be interpreted.

[6] On June 10, 2004, the Town petitioned the County for a contribution to the cost of bridge construction.

[7] On September 9, 2004, the County sent a letter refusing to contribute to the cost of the bridge's construction.

[8] The construction of the bridge was completed in March 2005, and the connection of the highway to both sides of the bridge was completed in August 2005.

[9] The statutory obligation for payment by a county is now found at Wis. Stat. § 82.08(3).

## II. DISCUSSION

### A. Standard of Review

¶ 51. We independently review whether summary judgment was properly granted, employing the same procedure as the circuit court employed. *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 15, 291 Wis. 2d 283, 717 N.W.2d 17. Statutory interpretation and application are at the heart of the summary judgment decision in this case. They, too, present questions of law for our independent review; however, we benefit from the reasoning of the court of appeals and the circuit court. *Marder v. Bd. of Regents of the Univ. of Wis. Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Interpretation of Wis. Stat. § 81.38(1)

¶ 52. In order to determine whether the County has a statutory obligation to contribute to the Town's cost of bridge construction, we must interpret and apply Wis. Stat. § 81.38(1).

#### 1. General principles

¶ 53. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). Plain meaning may be ascertained not only from the words employed in the statute, but also from statutory context. *Id.*, ¶ 46. We do not interpret statutory language in isolation, but rather, as that language appears in relation to surrounding or related

statutes, and reasonably, to avoid absurd or unreasonable results. *Id.* We also presume that the legislature meant an interpretation that will advance the objective of the statute. *GTE N. Inc. v. Pub. Serv. Comm'n of Wis.*, 176 Wis. 2d 559, 566, 500 N.W.2d 284 (1993).

¶ 54. If a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous, and we may consult extrinsic sources to discern its meaning. *Kalal*, 271 Wis. 2d 633, ¶¶ 47–48, 50. However, a statute is not ambiguous simply because two litigants disagree about its meaning. *Id.*, ¶ 47.

¶ 55. The lead opinion concludes that the Town is not due a contribution from the County for the Town's construction of the bridge because this bridge does not fall within the phrase, "bridge on a highway maintainable by the town."[10] The lead opinion reaches this conclusion because West Beltline Highway frontage road and Ski Lane were not a contiguous highway when the bridge was constructed.[11] In so concluding, the lead opinion interprets the statutory phrase contrary to the context in which it and similar phrases are used throughout the statutes when identifying other types of bridges in Wisconsin. It also interprets the phrase contrary to the cost-sharing purpose of Wis. Stat. § 81.38(1).

2. Contextual assessment

¶ 56. The statutory phrase on which our determination rests is: "bridge on a highway maintainable by the town." Wisconsin Stat. § 81.38(1) provided in relevant part:

---

[10] Lead op., ¶ 4.

[11] *Id.*

> When any town has voted to construct or repair any culvert or bridge on a highway maintainable by the town, and has provided for such portion of the cost of such construction or repair as is required by this section, the town board shall file a petition with the county board setting forth said facts and the location of the culvert or bridge; and the county board . . . shall thereupon appropriate such sum as will, with the money provided by the town, be sufficient to defray the expense of constructing or repairing such culvert or bridge . . . .

The statutory phrase, "on a highway maintainable by the town," modifies the word, "bridge," in § 81.38(1). This prepositional phrase identifies a particular type of bridge by describing the location of the bridge.

¶ 57. Many similar phrases in other sections of the statutes identify other types of bridges, also through the use of a prepositional phrase that describes the location of the bridge in relation to which entity is responsible for maintaining the highway of which the bridge is, or will become, a part. For example, "a bridge which is not on the state trunk highway system or on marked routes of the state trunk highway system designated as connecting highways" are the phrases employed to define a "local bridge" in Wis. Stat. § 84.18(2)(d) (2005–06). A bridge "not on the state trunk highway system" is the phrase employed in Wis. Stat. § 84.10 (2005–06) to address the maintenance and operation of one specific type of bridge that is not located on state trunk highways. In addition, "every highway bridge on a city, village, or town boundary shall be repaired and maintained by any adjoining municipality in which the bridge is located" is the phrase used in Wis. Stat. § 82.23 (2005–06) to identify municipal line bridges. Further, "a bridge on a highway

in this state which crosses waterways, other topographical barriers, other highways or railroads" is the identifying phrase in Wis. Stat. § 84.17(1)(b) (2005–06) that describes the type of bridge for which certain inspections are required by a particular entity.[12] None of the statutes condition the identification of the type of bridge described on whether the bridge was constructed before or after the highway that establishes the location of the bridge; yet, all of the statutes share similar syntax in that they employ a prepositional phrase to identify a type of bridge by its relationship to the highway of which it is, or will become, a part.

¶ 58. In *Village of Bloomer v. Town of Bloomer,* 128 Wis. 297, 107 N.W. 974 (1906), we discussed a type of bridge for which expenses were to be shared between a village and a town. There, the Village determined that it was necessary to repair and then build a new bridge on a town road that was bisected by a navigable creek as the road ran through the Village. *Id.* at 300–01. Accordingly, the bridge was of a type that was identified in "ch. 284, Laws of 1899" that created a cost-sharing relationship between a village and a town for that type of bridge. *Id.* at 302. The Village presented a claim for $2,022.74 to the Town for the construction of the bridge, and the Town disallowed it. *Id.* at 301.

¶ 59. The Town did not argue that the bridge was not of the type described in the statute, but rather, it challenged the statute that apportioned payment for

---

[12] There are other statutes, too numerous to mention, that identify other types of bridges and address inspection, maintenance or construction. *See, e.g.,* Wis. Stat. § 83.15 (2005–06) (county aid for state line bridges); Wis. Stat. § 84.12 (2005–06) (interstate bridges); Wis. Stat. § 84.14 (2005–06) (bridge construction); Wis. Stat. § 84.15(1) (2005–06) (maintenance of intrastate bridges).

the bridge on constitutional grounds. *Id.* at 304. We concluded that requiring cost-sharing between municipalities was within the legislature's power, and we noted that "[t]he law relating to county aid to towns for bridge purposes has been often approved." *Id.* at 305. We also noted that the legislative directive under challenge "no more violates the constitutional provision referred to than the law providing for joint maintenance of bridges on town-line roads." *Id.* at 310.

¶ 60. Throughout *Village of Bloomer,* we reasoned by analogy to other types of bridges, all of which were identified by the locations of bridges in relationship to the highways on which they had been or would be constructed. That reasoning is directly applicable here where the plain meaning of the statutory words employed in Wis. Stat. § 81.38 identifies the type of bridge that is subject to cost-sharing between a town and a county as one that is "on a highway maintainable by the town." There is no dispute that West Beltline Highway frontage road and Ski Lane were highways maintainable by the Town when the Town petitioned the County to contribute to the cost of constructing the bridge.

3. Statutory purpose

¶ 61. We also interpret the words chosen by the legislature in light of the purpose for which the statute was enacted. *GTE,* 176 Wis. 2d at 566. Wisconsin Stat. § 81.38(2) and the purpose for which it was enacted were discussed in *Town of Grand Chute v. Outagamie County,* 2004 WI App 35, 269 Wis. 2d 657, 676 N.W.2d 540. There, the question presented was whether Outagamie County was "liable for one-half the costs of repairing a bridge in the Town of Grand Chute." *Id.,* ¶ 1. The actual cost of repair exceeded the amount that the Town requested in its initial petition for aid, and

the County argued that it was not liable for any costs incurred after the petition for aid was approved by the County. *Id.*

¶ 62. The court of appeals reasoned that when a town votes to repair or to construct a bridge and petitions the county of which the town is a part for aid, if the town has raised funds sufficient to meet the town's statutory obligation in that regard, the county is obligated "to pay for one-half the cost of constructing or repairing the town's bridge." *Id.*, ¶ 2. As the court of appeals examined the concerns of the parties before it, the court noted that Wis. Stat. § 81.38 is a "cost-sharing scheme" in which both county and town participate. *Id.*, ¶ 3. In concluding that Outagamie County must pay the Town of Grand Chute, the court of appeals observed the purpose of § 81.38 as follows: "Most importantly, however, we conclude that the goal of Wis. Stat. § 81.38 is to have counties absorb half the cost of constructing or repairing bridges." *Id.*, ¶ 18.

¶ 63. The lead opinion's interpretation of Wis. Stat. § 81.38 contravenes the legislative purpose of cost-sharing that underlies § 81.38 because it permits the County to avoid its statutory obligation to contribute to the Town for the construction of the bridge. *Id.*, ¶ 3. Statutory interpretation that contravenes the legislative purpose underlying the statute is not favored. *GTE*, 176 Wis. 2d at 566; *Brown v. Thomas,* 127 Wis. 2d 318, 323, 379 N.W.2d 868 (Ct. App. 1985). The lead opinion identifies no reason, nor could this writer identify a reason, why the legislature would establish a cost-sharing scheme for bridge construction and maintenance when the highway is constructed first, but then nullify the same cost-sharing when the bridge is constructed first.

¶ 64. And query, now that the bridge has been constructed and has joined Ski Lane and the West

435

Beltline Highway frontage road, under the lead opinion's reasoning, has Dane County no statutory obligation to assist the Town in maintaining the bridge? Surely the lead opinion would not question that the County does have a statutory maintenance obligation for this bridge.

¶ 65. Whether the bridge is constructed first or whether the highway is constructed first, in either case, the bridge becomes part of a contiguous highway within the Town and the County. The plain meaning of the words chosen by the legislature requires Dane County to contribute its statutory share of the cost the Town of Madison incurred in constructing the bridge that connected West Beltline Highway frontage road to Ski Lane, thereby creating a contiguous highway, which highway continues to be maintainable by the Town.

C. The Lead Opinion's Secondary Rationale

¶ 66. As a secondary rational, the lead opinion concludes that, in addition to the bridge not being connected physically to an existing highway from the moment of its construction, the Town's petition was properly denied because the Town did not request funding to extend the highway to the bridge.[13] The lead opinion's rationale for this conclusion escapes me.

¶ 67. Is the lead opinion really saying that if the Town had asked for more money than it did, its request for bridge funding would have been granted? That appears to be the case because the lead opinion faults the Town for not applying for funding to extend the highway to the constructed bridge.[14] However, the Town's counsel acted prudently by not seeking such

[13] Lead op., ¶¶ 38 & n.20, 40.
[14] *Id.*

436

funding. I note that the gap between where the bridge was to be constructed and the then existing highway was 200 feet.[15] The statute provides for cost-sharing for only a 100–foot highway extension. Wis. Stat. § 81.38(2). Accordingly, the Town recognized that it was statutorily ineligible to receive funding to extend the highway all the way to the bridge.[16]

¶ 68. It is telling that the lead opinion character-izes the funding for the highway extension as funding to "help" connect the bridge to a highway maintainable by the Town.[17] With a 200–foot gap between the bridge and the highway, County funding would not have caused the highway to reach all the way to where the bridge was to be built. The lead opinion's suggestion would leave the Town with a 100–foot gap between the yet-to-be-constructed bridge and the highway.[18] The lead opinion's reasoning in this regard underscores that, despite its protestations to the contrary, it consid-ers the word "on" within Wis. Stat. § 81.38 to be dispositive of this case. That is, under the lead opinion's interpretation of § 81.38, the bridge must be con-structed *after* the highway is complete so the bridge can *physically touch* the highway immediately upon the bridge's construction. The lead opinion's statutory in-terpretation defeats the cost-sharing mandate of Wis.

---

[15] *Id.*, ¶ 7.

[16] Nevertheless, the lead opinion suggests otherwise, es-chewing cogent reasoning for opportunities to make fey refer-ences to James Brown by stating that the "Town failed to request funding in its petition that would *bridge the gap between the bridge and the highway,* and . . . ensure that fund-ing was allocated to help 'take it to the bridge.' " *Id.*, ¶ 38 (emphasis added).

[17] *Id.*, ¶¶ 4, 38, 41–42.

[18] *Id.*, ¶¶ 38 & n.20, 40.

Stat. § 81.38(1) and therefore it cannot be the correct interpretation of the statute.

## III. CONCLUSION

¶ 69. The phrase, "bridge on a highway maintainable by the town," identifies a type of bridge by describing the relationship of the bridge to the highway of which it is, or will become, a part. The type of bridge that is "on a highway maintainable by the town" is distinguished from many other types of bridges referenced in the statutes that also are located on highways, but which highways are maintained by governmental entities other than a town, such as the state or another municipality. The phrase, "bridge on a highway maintainable by the town," has nothing to do with whether the bridge was constructed before or after the highway was constructed. Rather, if the bridge is of the type identified in Wis. Stat. § 81.38(1), the town may apply to the county of which the town is a part for assistance in maintaining or constructing such a bridge. If the county has not opted out of § 81.38(2), the county must pay its statutory share of the costs incurred.

¶ 70. Accordingly, I would affirm the decision of the court of appeals, and I dissent from the lead opinion.

¶ 71. I am authorized to state that Justices DAVID T. PROSSER and ANNETTE KINGSLAND ZIEGLER join this dissent.